[No. E008113. Fourth Dist., Div. Two. July 9, 1991.]

ELIAS S. OLVERA, SR., et al., Plaintiffs and Appellants, v.
PAULA D. OLVERA, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part C.

**COUNSEL**

Harold M. Fagin for Plaintiffs and Appellants.

David P. Weilbacher for Defendant and Respondent.

**OPINION**

**TIMLIN, J.**—Plaintiffs Elias S. Olvera, Sr., and Annie Olvera (hereinafter the Olveras) appeal from an order vacating a default judgment entered in their favor against defendant Paula Olvera (hereinafter Paula).[1] Although the record and the briefs on appeal reflect a considerable lack of clarity with respect to the governing law, we hold that the trial court properly granted relief.

---

[1]The order is appealable under Code of Civil Procedure section 904.1, subdivision (b), as an order made after the entry of a final judgment. (See *Nuckolls* v. *Bank of California* (1937) 10 Cal.2d 266, 271 [74 P.2d 264, 114 A.L.R. 708].)

Judgment by default was also entered against defendant Richard Olvera. He is not a party to this appeal. Richard is the son of plaintiffs Olvera; Paula was married to Richard at the time of the transaction involved in the lawsuit, but the marriage was dissolved in July 1988.

## STATEMENT OF FACTS

The Olveras filed this action on June 30, 1988, against Paula and Richard Olvera for breach of contract, fraud and the remedy of specific performance. Plaintiffs alleged that in 1985, they had orally agreed to lend $17,000 to defendants, and that defendants had orally agreed either to execute a second deed of trust on property located at 2840 Collingswood, in Riverside, California, as security for the loan, or to obtain a loan on the property from another source and repay plaintiffs "immediately." Plaintiffs further alleged that defendants had failed to repay the entire sum or to execute the trust deed as security, and sought the remedies of a money judgment and specific performance of the promise to execute a trust deed.

On the same date, the Olveras filed a notice of recordation of lis pendens affecting the Collingswood property. The notice included a proof of service by mail on Paula "c/o Casa Calderon, 197 Pomery, Pismo Beach, CA 93449."[2]

On September 12, 1988, the Olveras filed an application for order for publication of summons. (Code Civ. Proc., § 415.50.)[3] The spaces in the form application which were provided for an explanation of the efforts at personal service were all filled in with the assertion that "Defendant no longer resides in Riverside, Ca., and cannot be found" or variants of this phrase. Some further explanation was given, as follows:

"Plaintiffs have contacted Defendant RICHARD M. OLVERA, who is their son, and who is the former husband of Defendant PAULA D. OLVERA; to ascertain the present whereabouts of PAULA D. OLVERA, but all the former husband knows is that defendant PAULA D. OLVERA may be somewhere in California, but her exact residence or place of employment cannot be ascertained. The plaintiffs believe that she may receive her mail by her relatives in Pismo Beach, Ca., PAULA D. OLVERA formerly worked as a secretary at Riverside General Hospital for about ten (10) years. She is no longer employed there or elsewhere in Riverside, Ca., to the best knowledge of Plaintiffs.

"Plaintiffs have received a letter from Defendant PAULA D. OLVERA, but there was no/personal return address for said Defendant.

---

[2] The street name is more generally spelled "Pomeroy"; the street on which the property in question is located is usually spelled "Collingswood" by the parties, with the variant "Collingwood." We employ the more common forms except where directly quoting a document sent by one of the parties.

[3] Unless otherwise noted, all subsequent statutory references are to the Code of Civil Procedure.

"Defendant PAULA D. OLVERA, left no forwarding address with her former employer, to the best knowledge of the Plaintiffs."

The application was verified by plaintiff Elias Olvera; however, there was no accompanying affidavit establishing the existence of a cause of action against Paula.

The application sought publication in the Press-Enterprise, a newspaper of general circulation published in Riverside, and the order for publication so provided. There is no contention that the subsequent publication did not conform to the provisions of Government Code section 6064; a proof of publication was duly filed showing completion of publication on October 7, 1988. As publication began on September 16, the 28-day notice period under the Government Code expired, and service was deemed complete, on October 13.

Paula did not respond within the statutory time and her default was entered on November 17, 1988. On the same date, following testimony by Elias Olvera at a prove-up hearing, judgment was entered in favor of the Olveras and against Richard and Paula. The judgment provided that defendants were jointly liable for the principal sum of $13,997, plus attorneys' fees of $4,600, punitive damages of $6,000, and $535.60 in costs. Paula was further ordered to execute a note secured by a deed of trust on the Collingswood property in favor of the Olveras.[4]

Notice of entry of judgment was sent to Paula on November 20, 1988, at the Collingswood address, with a request for forwarding. However, it was returned with the notation that she had left no forwarding address.

On November 3, 1989, Paula filed a "motion to set aside judgment." The stated bases were that the judgment was void due to improper service, and that it was obtained through extrinsic fraud. Paula argued both that the

---

[4]The complaint alleged that defendants had paid $4,003 on the loan, leaving a balance due, and demanded, of $12,997. The judgment described this as a typographical error, and ordered that the complaint be amended to show payments of only $3,003 and a sum due of $13,997.

This appears to violate the rule of section 580, that a judgment by default cannot exceed the sum demanded in the complaint. Although the punitive damages award of $6,000 was less than the demand of $7,500—so that the *total* awarded was less than that demanded—this is immaterial. Compensatory and punitive damages differ in nature and purpose, and a " 'demand or prayer for one is not a demand legally, or otherwise, for the other, or both.' [Citation omitted]"; thus, a judgment which exceeds the demand for compensatory damages cannot be justified by a demand for punitive damages which remains unexhausted. (*Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494-495 [165 Cal.Rptr. 825, 612 P.2d 915].) However, in light of our resolution of the case, any error in the calculation of the amount of the judgment is not critical.

Olveras had failed to disclose information known to them which would have suggested to the court that they had the power to effect personal service on her, and that the use of the Press-Enterprise was not reasonably calculated to give her notice of the action.

In support of this motion, Paula filed a declaration which included the following information. On May 5, 1988, Richard had appeared at a laundry "near my residence in Pismo Beach. Richard left and returned with our son, [who was then 14 years old] in his vehicle." Three days later, Richard returned the son "to my mother's house, which was also my residence with my son . . . ." During the summer of 1988, the son spent two months with his grandparents, the plaintiffs, and the son always knew where to reach Paula. On July 24, Paula visited her son at Richard's residence in Riverside. On September 5, she picked up her son at the Olveras' residence in Riverside.[5]

Paula's telephone number was listed in the October 1988 telephone directory which included the Pismo Beach region; it was listed under the name "D. Olvera," as she commonly used the name "Diane." The exact date of issuance of the directory was not established.

Paula's mother had owned a restaurant in Pismo Beach called "Casa Calderon," located at 197 Pomeroy Avenue. The Olveras had visited the restaurant on several occasions and were aware that it was owned by Paula's mother; the restaurant's telephone number and address were regularly included in the telephone directories.

Finally, Paula was renting the house on Collingswood, and the tenant knew her address, as rent checks were mailed to her each month.

Paula did not submit a proposed answer or other proposed pleading with her motion.

In response, the Olveras attempted at length to rebut this showing, and also argued that Paula's facts did not prove that they knew, or could have discovered, her whereabouts. They admitted knowing about the Casa

[5]We do not repeat other information concerning contacts between Paula and the Olveras after the publication was completed, as they are irrelevant to the issue of plaintiffs' knowledge at the time the application for publication was presented and during the period of notice.

We also disregard the assertions in plaintiffs' reply brief concerning investigations of Paula's whereabouts in 1988 which were apparently conducted during the pendency of this appeal. This matter was not before the trial court and this is not an appropriate case for this court to take additional evidence under California Rules of Court, rule 23. In any event, the information is not relevant to the question of plaintiffs' good faith up to September 12, 1988, and in no way establishes that Paula could not have been located.

Calderon, but asserted—without factual support—that Paula was afraid of Richard and kept her residence secret. They stated that they had called Paula's mother, and that the mother had said that Paula was not there but would be given a message to call Elias Olvera. They claimed that Paula's son had never told them where she lived, and argued that their contact with the boy did not prove their knowledge of his mother's whereabouts. Similarly conceding that the Collingswood house tenant might have known Paula's address, they assert that *they* did not know it and that Paula was concealing it. They point out that the notice of entry of judgment was sent to the Collingswood address, and returned as not forwardable.

The Olveras also pointed out that on August 22, 1988, Paula wrote to them acknowledging receipt of "the letter from your attorney, which I understood to say that you put a lean [*sic* ] on the house on Collingwood." The Olveras argued that this letter, which apparently refers to the notice of lis pendens, demonstrates Paula's knowledge of the lawsuit, and they also quoted her promise that she "intend[ed] to start making payments soon . . . . If you need to continue with the legal action, it is fine with me . . . ."[6]

Paula's reply regarding this letter of acknowledgement seized on the fact that plaintiffs had received a response from her to the notice sent to 197 Pomeroy in Pismo Beach; the envelope of the response displayed this as a return address as well. The Olveras' last counter-reply stressed that the telephone listing for "D. Olvera" included no address, and that they had never reached Paula at the "Casa Calderon."

At the hearing, the trial court focused on the fact that publication was requested in Riverside rather than in the Pismo Beach area, and commented that the matter appeared to fall squarely within the provisions of section 473.5. Plaintiffs argued that Paula had not filed her motion within the time limits of section 659 (motion for new trial), but the trial court stated "He didn't give actual notice and you knew that . . . . Does that mean I am supposed to ignore everything else because he cites the wrong code section?"[7] The court then expressly indicated that it was granting the motion under section 473.5.

## DISCUSSION

Although the trial court based its decision on section 473.5, on appeal we may consider whether the order was supported by any of the grounds raised

[6]Plaintiffs also showed that on July 6, 1988, Paula had signed for a certified letter sent by them to 197 Pomeroy, Pismo Beach.

[7]In fact, the applicability of section 659 was first raised by the Olveras through their attorney. We can find no reliance on that section in Paula's motion.

by the parties. ■ "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) As this court has observed, this principle does not invariably apply and does not justify reliance on an alternate theory if the evidence presented to the trial court was in conflict, and not resolved by the trial court. (*Cramer* v. *Morrison* (1979) 88 Cal.App.3d 873, 887 [153 Cal.Rptr. 865].) Here, however, we may review the undisputed evidence to determine whether the ruling was correct on any ground argued by the parties.

A.

*Did Section 473.5 Apply to Paula?*

Section 473.5, subdivision (a), permits the court to vacate a default judgment if "service of a summons has not resulted in actual notice to a party in time to defend . . . ." A motion for relief may be made within two years after entry of the default judgment.[8]

Under an earlier version of this statute, the right to relief was virtually absolute in cases of constructive service. However, although that version did not mention the effect of actual notice of the lawsuit, it was established that a defendant's actual knowledge gave the court discretion to deny relief, depending on such equitable factors as diligence and laches. (*Tucker* v. *Tucker* (1943) 59 Cal.App.2d 557, 560 [139 P.2d 348].)

The present statute has been construed by at least one commentator to preclude relief if the defendant has acquired actual knowledge of the action. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 193, p. 592.) Here, Paula's August 1988 letter in response to receipt of the notice of filing lis pendens is plain proof that she was aware that the Olveras had commenced an action against her on June 30, 1988.

We note that "actual knowledge" has been strictly construed, with the aim of implementing the policy of liberally granting relief so that cases may be resolved on their merits. (*Goya* v. *P.E.R.U. Enterprises* (1978) 87 Cal.App.3d

---

[8]The time is limited to 180 days following the entry of judgment, if notice of entry is served. Here, the Olveras purported to serve notice on Paula at the Collingswood address, at which she did not reside and was *known* by them not to reside. We find this notice insufficient to trigger the shorter period.

886, 891 [151 Cal.Rptr. 258].) In *Goya*, a finding of no "actual knowledge" was upheld even though the defendants concededly received actual copies of the summons and complaint; instead, the court accepted the contention that defendants' inability to understand English, and lack of business sophistication, amounted to a lack of "actual knowledge." In *Rosenthal* v. *Garner* (1983) 142 Cal.App.3d 891 [191 Cal.Rptr. 300], the court allowed relief under section 473.5 where, in addition to service by publication, plaintiff had sent a copy of the summons and complaint to defendants' counsel; the court refused to find this imputed knowledge equivalent to the actual knowledge required by the statute. (Accord, *Tunis* v. *Barrow* (1986) 184 Cal.App.3d 1069 [229 Cal.Rptr. 389].)

The liberal approach of these cases would arguably support a literal reading of the statute which makes actual notice irrelevant *unless acquired as a result of service of the summons.* Alternatively, it suggests that Paula's awareness that a lawsuit had been filed in June, based upon the receipt of a notice of recordation of lis pendens, did not necessarily give her "time to defend the action." Until summons is served, there is no need to respond; a defendant may believe that the action will not be pursued. Additionally, a notice of lis pendens does not necessarily disclose that any tort causes of action, such as fraud, are part of the lawsuit.

However, we do not think that this policy can be stretched too far without contravening the plain language of the statute and the practical reasons for providing a mechanism for relief. ▮ Section 415.50, authorizing service by publication, allows the court to acquire jurisdiction over a defendant who cannot be served personally or by substituted service under section 415.20 or 415.30, even after diligent effort. Jurisdiction so acquired is constitutional. (*Miller* v. *Superior Court* (1961) 195 Cal.App.2d 779, 786 [16 Cal.Rptr. 36].) However, it is recognized that such service is on many occasions unlikely to result in actual notice, and to some extent the same may be true of any form of substituted or constructive service. Thus, section 473.5 reflects the understanding that if any form of service of summons does not result in actual knowledge, fundamental fairness may require that a subsequent default be set aside.

▮ We hold that if the court has acquired jurisdiction, i.e., summons has been served, but service of summons has not resulted in actual notice to a defendant, although the defendant has acquired actual knowledge of the action from another source, this does not preclude a defendant from seeking relief under section 473.5. We note that the findings in subdivision (c) of section 473.5, which the court must make before exercising its discretion, do not include a determination by the court that defendant did not have actual notice from the summons and from no other source.

The issue remains whether under the circumstances the court abused its discretion in granting relief. A defendant who has been constructively served may have "actual knowledge" about the action from information which is fragmentary or unconfirmed. In a proper case, it may be insufficient to place upon a defendant the duty of making inquiries about the lawsuit against her or him; other circumstances—the limits of which we will not attempt to define here—may also make a strict application of the "actual knowledge" exception inequitable.

Such circumstances exist here. Paula was aware of the lawsuit after she was sent a copy of the notice of lis pendens. However, she did not know that plaintiffs had alleged a cause of action for fraud against her, or that punitive damages were sought. Her letter of August 1988, may have reflected an indifference to a lawsuit seeking only contract damages, but her reaction may well have been different had she known that she was being sued for fraud and deceit. Furthermore, at that time the court had not yet acquired jurisdiction over her by service of process. She was under no obligation to respond. Finally, she was justified in the belief that plaintiffs were aware of her whereabouts, and she could reasonably await further action by the Olveras before affirmatively making inquiries about the nature and progress of the litigation. Accordingly, we hold that the trial court did not abuse its discretion and properly vacated the judgment under section 473.5.

## B.

### *The Service by Publication Was Invalid, and the Judgment Was Void*

■ As an alternative basis for affirming the judgment, we further find that the order for publication was void.

Personal service remains the method of choice under the statutes and the constitution. (See Judicial Council com., West's Ann. Code Civ. Proc. (1973 ed.) § 415.20, p. 554 [Deering's Ann. Code Civ. Proc. (1991 ed) § 415.20, p. 656]; *Evartt* v. *Superior Court* (1979) 89 Cal.App.3d 795, 799 [152 Cal.Rptr. 836].) When substituted or constructive service is attempted, strict compliance with the letter and spirit of the statutes is required. (*Stern* v. *Judson* (1912) 163 Cal. 726, 735 [127 P. 38].) We are of the opinion that the affidavit in support of the application for permission to accomplish service by publication was both deficient on its face and materially misleading, and that the Olveras not only failed to *show* due diligence, but failed to *exercise* it. The judgment based on such service was therefore void and subject to direct or collateral attack. (*Evartt* v. *Superior Court, supra,* 89 Cal.App.3d at p. 802; *Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327, 334 [150 Cal.Rptr. 855].)

The affidavit itself was not sufficient. It affirmatively discloses that plaintiffs had received a letter from Paula; the assertion that the letter contained no "personal" return address virtually demands some explanation of the reason why the return address which *was* given was not considered helpful. Although plaintiffs admitted knowing Paula's general whereabouts, there was no indication that they had employed any of the usual means to find her. (See *Sanford* v. *Smith* (1970) 11 Cal.App.3d 991, 1001-1002 [90 Cal.Rptr. 256], approving the standards of diligence required by the local rules of Los Angeles Superior Court: recent inquiries of *all* relatives, friends, and other persons likely to know defendant's whereabouts; searches of city directories, telephone directories, tax rolls, and register of voters; and inquiries made of occupants of all real estate involved in the litigation.) Finally, plaintiffs did not allege that they had employed either a private process server or the appropriate governmental officer authorized to serve process in the Pismo Beach area to attempt personal service.

The foundational facts for the repeated allegation that Paula could not be found were so slight as to be unworthy of serious consideration. It is well established that the affidavit submitted under section 415.50 must establish reasonable diligence by "probative facts" based on personal knowledge. (*In re Behymer* (1933) 130 Cal.App. 200, 204 [19 P.2d 829]; *Sanford* v. *Smith, supra,* 11 Cal.App.3d 991, 998-999.) The affidavit here was not sufficient.[9]

It is also proper to consider not only the affidavit itself, but the facts demonstrated by the applicant. (*Donel, Inc.* v. *Badalian, supra,* 87 Cal.App.3d 327, 333.) In this context the Olveras' repeated claims of actual ignorance of Paula's whereabouts are not persuasive. It is not actual ignorance that permits resort to service by publication, but the inability to accomplish personal service despite the exercise of reasonable diligence. Plaintiffs argue that their grandson never told them Paula's residence—but did they ask? Paula did not return their calls—but did they, or their agent, ever personally visit Pismo Beach or the Casa Calderon? Did they ever ask Paula when she visited or picked up her son? Did they make any inquiries whatsoever through official channels?

The last factor to be considered is the choice of the Riverside Press-Enterprise for publication. Section 415.50, subdivision (b), requires the use

---

[9]The application was not accompanied by an affidavit establishing the existence of a cause of action in favor of the Olveras, as required by section 415.50, subdivision (a)(1). The complaint, although verified, was no substitute for the required affidavit, and the existence of a cause of action was a jurisdictional prerequisite to the issuance of the order for publication. (*Harris* v. *Cavasso* (1977) 68 Cal.App.3d 723, 726 [137 Cal.Rptr. 410].) Although the form application for service by publication contains a form affidavit for this purpose, it was not completed by plaintiffs.

of the "newspaper, published in this state, that is most likely to give actual notice to the party to be served . . . ." Nothing in the affidavit, or in the more detailed facts before the trial court, supported the election of this newspaper. Plaintiffs repeatedly insisted that Paula was no longer in Riverside and admitted only that she received mail in Pismo Beach.

In short, the Olveras' entire showing below utterly fails to establish any diligence whatsoever and no concern for providing actual notice—let alone the high standard required before service by publication may be authorized. (*Sanford* v. *Smith, supra,* 11 Cal.App.3d 991, 1001.) "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 315 [94 L.Ed. 865, 874, 70 S.Ct. 652].) The Olveras simply stuck their heads in the sand and made no reasonable effort to accomplish personal service or discover Paula's residence for substituted service. As a result, the service by publication was invalid and the judgment could not be sustained.

C.*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The requests by both sides for sanctions are denied.

Plaintiffs shall pay defendant's costs on appeal.

The judgment is affirmed.

Hollenhorst, Acting P. J., and McKinster, J., concurred

---

*See footnote, *ante*, page 32.