[No. B099394. Second Dist., Div. Seven. May 23, 1996.]

IRVING KOTT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BEACHPORT ENTERTAINMENT CORPORATION, et al., Real Parties
in Interest.

## COUNSEL

William E. Lloyd, Jr., for Petitioner.

No appearance for Respondent.

Love & Bosserman, Beth A. Shenfeld and Eileen Spandoni for Real Parties in Interest.

## OPINION

**JOHNSON, J.**—This is a petition for a writ of mandate in which petitioner, Irving Kott, seeks to reverse the trial court's order refusing to quash service of summons. The issue is whether service of summons by publication is invalid under the Hague Service Convention once plaintiffs learned petitioner was a resident and citizen of Canada. We hold service by publication in this case was invalid due to plaintiffs' failure to exercise due diligence to locate petitioner in Canada before seeking court authorization to accomplish service by publication in a Los Angeles newspaper. Accordingly, we issue the writ.

### FACTS AND PROCEEDINGS BELOW

Real parties in interest, Beachport Entertainment Corporation and Stuart Benjamin Productions, Inc. (Beachport), are corporations formed to engage in various entertainment ventures, including television programming, motion picture and television features, and related enterprises.

In 1994, Beachport sought to increase its capitalization by approximately $12 million through public and private stock offerings. Beachport hired defendant JB Oxford & Company (Oxford) as its exclusive underwriting and investment banking firm.

Apparently Oxford failed to perform as expected, and in 1995 Beachport brought suit for damages for breach of contract, fraud and breach of fiduciary duty. The allegations of the complaint claim the defendants failed and refused to find private funding for Beachport to acquire Stuart Benjamin Productions, Inc., and to fund other business enterprises. Named as defendants in the suit were Oxford and its principals, Donald Hately and David Shriner. These defendants were properly served with the summons and complaint.

On May 27, 1995, Beachport attempted to serve Kott by substituted service at Oxford's offices and was told Kott was not available. Service on

Kott was attempted the next day but counsel for Oxford refused service, stating Kott was ineligible for substituted service at Oxford's offices. On June 6, 1995, substituted service was again attempted at Oxford's offices and counsel again insisted Kott could not be served at Oxford's offices. Nevertheless, Beachport's process server filed a declaration of due diligence with the court, stating he had served Kott through substituted service by leaving a copy of the summons and complaint with counsel for Oxford and by also mailing copies to Kott at the Oxford address on Wilshire Boulevard in Beverly Hills.

On August 2, 1995, Kott's counsel filed a motion to quash service, claiming the substituted service was invalid. He explained Kott was not an employee of Oxford, did not maintain offices at Oxford and Oxford's address was not Kott's usual mailing address. In the motion counsel pointed out he had successfully challenged substituted service in two recent unrelated matters where service on Kott was attempted by serving him at Oxford's offices.

Attached to the motion to quash was a declaration from Oxford's counsel. He stated Kott was an employee of one of Oxford's consulting firms. Counsel explained when Kott is present at the Oxford offices he is functioning solely as an agent of the consulting firm. Counsel acknowledged Kott visits the Oxford offices frequently enough for staff persons to be familiar with him, but while he may receive telephone messages, Kott does not receive any mail at Oxford's offices.

At the hearing on Kott's motion to quash on August 31, 1995, the trial court expressed irritation at Kott's refusal to voluntarily accept service. The trial court was not pleased with the fact Kott had managed to challenge service in the unrelated matters as well. However, Beachport had no evidence tending to demonstrate Kott had ever received mail at the Oxford offices. Consequently, the trial court granted the motion to quash but warned Kott's counsel it would entertain an application for service by publication in order to gain jurisdiction over Kott if he did not voluntarily allow Beachport to accomplish service on him in this action.

Kott's counsel explained Kott was putting Beachport through its paces because the action against him was not meritorious and was similar to one of the other cases in which he was brought into the suit based on nothing more than an ad he ran in a Canadian newspaper. Counsel further explained Kott was recently dismissed from that case on summary judgment. The trial court commented "I gathered from what you said that this individual resides for some time in Canada." Kott's counsel confirmed by stating, "He's a Canadian citizen."

Two weeks later, on September 14, 1995, Beachport filed an application for an order for publication of summons. The application stated the residence and business addresses of Kott were unknown. The affidavit in support of the application for publication stated that on June 26, 1995, Beachport had hired a private investigator to conduct a skip search for Kott. The investigator filed an affidavit stating over the two-day period of *June 26 and 27, 1995*, he conducted a statewide search for Kott's address. The investigator stated he went to Oxford's offices where he "was advised" Kott was "in Europe and no longer with the company." The person told the investigator Kott had left no forwarding address or telephone number. The investigator then searched, among other things, the Los Angeles telephone directory, the records of the California Department of Motor Vehicles, the registrar of voters for Los Angeles County, and the Los Angeles County recorder's office.

The investigator learned Kott had no telephone listing in Los Angeles, did not subscribe to magazines, was not on mailing lists, did not have a car registered in California, had not registered to vote and did not own property in Los Angeles County.

Based on this affidavit Beachport requested permission to publish the summons in the Los Angeles Daily Journal. The trial court granted Beachport's request.

Kott's counsel again filed a motion to quash service. He argued Beachport had failed to exercise reasonable diligence to locate Kott and service by publication on a Canadian citizen was ineffective for personal jurisdiction. Attached to the motion was a declaration from Oxford's counsel. In his declaration counsel stated Kott works for a consulting firm located in Montreal, Canada, that all correspondence with Kott is directed to Montreal, Canada, and that to his knowledge Kott is a Canadian citizen.

Beachport opposed the motion to quash, claiming it still had no valid address where it could personally serve Kott. In response Kott's counsel pointed out service on a Canadian citizen had to comply with the Hague Service Convention, and service by publication was invalid for Beachport's failure to comply with those procedures. Kott submitted a declaration as an attachment to the reply brief. In the declaration he gave the name and address of his place of business in Canada and further stated he would have authorized his counsel to give Beachport his residence and business addresses had anyone asked.

The trial court denied Kott's motion to quash. Kott petitioned this court for a writ of mandate to direct the trial court to reverse its order.

DISCUSSION

I. *Service on a Foreign National Has to Comply With the Hague Service Convention for Transmission of Judicial and Extrajudicial Documents Abroad.*

■ The Hague Service Convention is a multilateral treaty formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The 1964 version was intended to provide a simpler way to serve process abroad, to assure defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. (See *Volkswagenwerk Aktiengesellschaft* v. *Schlunk* (1988) 486 U.S. 694, 698 [100 L.Ed.2d 722, 729-730, 108 S.Ct. 2104].)

The scope of the Hague Service Convention is extremely broad. Article 1 of the convention provides: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. [¶] This Convention shall not apply where the address of the person to be served with the document is not known." (See Appen. to Fed. Rules Civ.Proc., rule 4, 28 U.S.C.)

The United States Supreme Court has interpreted this language as mandatory. "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies." (*Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, *supra*, 486, U.S. 694, 698, 699 [100 L.Ed.2d 722, 729-730, 730]; see also *Societe Nat. Ind. Aeros.* v. *U.S. Dist. Court* (1987) 482 U.S. 522, 534, fn. 15 [96 L.Ed.2d 461, 477-478, 107 S.Ct. 2542].)

In analyzing the various articles of the convention, the Supreme Court found it did not specifically define "service of process" and concluded the forum's internal law regarding service governed the question whether there is occasion for service abroad. This analysis, in turn, would determine whether compliance with the convention was required to validly serve a foreign national. (*Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, *supra*, 486 U.S. at pp. 701-704 [100 L.Ed.2d at pp. 731-734].)

In *Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, *supra*, 486 U.S. 694, the court held the Hague Service Convention does not apply when process is served on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service of process. (486 U.S. at pp. 706-708 [100 L.Ed.2d at pp. 735-736].) In this

factual situation judicial documents need not be transmitted abroad and therefore the convention is not implicated.

The court rejected the corporation's argument this interpretation of the convention might result in inconsistent and perhaps inadequate notice to foreign defendants. "[W]e do not think this country, or any other country, will draft its internal laws deliberately so as to circumvent the Convention in cases in which it would be appropriate to transmit judicial documents for service abroad. For example, there has been no question in this country of excepting foreign nationals from the protection of our Due Process Clause. Under that Clause, foreign nationals are assured of either personal service, which typically will require service abroad and trigger the Convention, or substituted service that provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652] (1950).

■ "Furthermore, nothing that we say today prevents compliance with the Convention even when the internal law of the forum does not so require. The Convention provides simple and certain means by which to serve process on a foreign national. Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service. In addition, parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad. [Citations.] For these reasons, we anticipate that parties may resort to the Convention voluntarily, even in cases that fall outside the scope of its mandatory application." (486 U.S. at pp. 705-706 [100 L.Ed.2d at pp. 734-735], fn. omitted.)

The Hague Service Convention states each signatory nation shall designate a central authority through which service of process may be effected. (Hague Service Convention, art. 2.) That authority receives documents and serves them in accordance with either the internal law of the receiving state or a compatible method requested by the sender. The authority then provides the sender with a certificate of service. (Hague Service Convention, arts. 5, 6.) A state may allow other methods of service within its boundaries. (Hague Service Convention, arts. 8-11, 19; see also *Volkswagenwerk Aktiengesellschaft* v. *Schlunk, supra*, 486, U.S. 694, 699 [100 L.Ed.2d 722, 730-731].) It may also object to the use of a particular method of transmission. (Hague Service Convention, art. 21.)

Both the United States and Canada are signatories to the Hague Service Convention. The United States was one of the original signatories and the

convention went into force in this country on February 10, 1969. Canada did not become a signatory until May 1, 1989. (See, e.g., *Straub* v. *A.P. Green, Inc.* (9th Cir. 1994) 38 F.3d 448, 452; *Curcuruto* v. *Cheshire* (S.D.Ga. 1994) 864 F.Supp. 1410, 1411.) ■ Accordingly, service through the Hague Service Convention provides the exclusive means of service on a Canadian national if there is occasion to transmit judicial or extrajudicial documents abroad.

In California, Code of Civil Procedure section 413.10 governs service of summons within and without the United States.[1] This section provides in pertinent part: "Except as otherwise provided by statute, a summons shall be served on a person:

". . . . . . . . . . . . . . . . . . . . . . .

"(c) Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. *These rules are subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention).*" (Italics added.)

In California service on an individual may be made by personal delivery of a copy of the summons and complaint. (§ 415.10.) Substituted service on an individual may be made by leaving a copy of the summons and complaint with a competent person at the individual's business, office, dwelling, usual place of abode or usual mailing address. (§ 415.20.) A summons also can be sent by first class mail with a return receipt requested, or coupled with an acknowledgment and return envelope with postage prepaid. (§§ 415.30, 415.40.) Summons may also be served by publication, if upon application it appears to the satisfaction of the court the party to be served cannot with reasonable diligence be served in another manner. (§ 415.50, subd. (a).) However, if the party's address is ascertained before expiration of the time prescribed for publication of the summons, copies of the complaint, summons and order for publication must be mailed to the person. (§ 415.50, subd. (b).)

Thus, with one possible exception, all of these methods for service on an individual requires transmission of documents abroad and are therefore

---

[1]All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

subject to the Hague Service Convention. (§ 413.10; see also *Quaranta* v. *Merlini* (1987) 192 Cal.App.3d 22, 29 [237 Cal.Rptr. 179], disapproved on another ground in *Watts* v. *Crawford* (1995) 10 Cal.4th 743 [42 Cal.Rptr.2d 81, 896 P.2d 807] ["Because respondent is an Italian citizen, appellants were required to attempt service pursuant to the Hague Convention"]; *Shoei Kako Co.* v. *Superior Court* (1973) 33 Cal.App.3d 808, 819 [109 Cal.Rptr. 402] ["This state, therefore, cannot attempt to exercise jurisdiction if to do so would violate an international treaty"]; *Suzuki Motor Co.* v. *Superior Court* (1988) 200 Cal.App.3d 1476, 1484 [249 Cal.Rptr. 376] ["It does not follow from these cases that the methods contained in the Convention on the Service Abroad of Judicial and Extrajudicial Documents are not the exclusive means of obtaining that initial personal jurisdiction over a foreign defendant via service of process"], italics omitted.)

■ Failure to comply with the Hague Service Convention procedures voids the service even though it was made in compliance with California law. (See Weil & Brown, Cal. Practice Guide: Civil Proceedure Before Trial 1 (The Rutter Group 1995) ¶¶ 4:146 to 4:147.3, pp. 4-32.10 to 4-32.13 rev. # 1 1995.) This is true even in cases where the defendant had actual notice of the lawsuit. (See, e.g., *Dr. Ing. H.C.F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 762 [177 Cal.Rptr. 155] [because West Germany objected to service by mail and through diplomatic channels, attempts to serve German corporation in this manner were void]; *Honda Motor Co.* v. *Superior Court* (1992) 10 Cal.App.4th 1043, 1048-1049 [12 Cal.Rptr.2d 861] [Japan does not recognize or permit service of summons by mail and service by mail rendered attempted jurisdiction void]; *Suzuki Motor Co.* v. *Superior Court*, *supra*, 200 Cal.App.3d 1476, 1484 [California courts may not exercise jurisdiction in violation of an international treaty].)

The only method of service under California law which does not require the transmission of documents abroad, and consequently does not implicate the Hague Service Convention, is service of summons by publication where the party's address remains unknown during the publication period despite the exercise of reasonable diligence. (*Quaranta* v. *Merlini*, *supra*, 192 Cal.App.3d 22 [in suit arising from automobile accident with Italian seaman, service unsuccessfully attempted three times at three different locations through Hague Service Convention before court authorized service of summons through publication]; see also Hague Service Convention, art. 1 [convention does not apply where address of the person to be served is not known].)

Beachport contends the Hague Service Convention was not implicated in the case at bar because Kott's address was unknown. For the same reason Beachport argues service of summons by publication was also proper.

Whether either of these contentions has merit depends on whether Beachport exercised reasonable diligence in attempting to discover an address where Kott could be served.

II. *Service by Publication Was Invalid Because Beachport Failed to Exercise Reasonable Diligence to Learn Kott's Address.*

"[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, [citations], or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (*Mullane* v. *Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 315 [94 L.Ed. 865, 874, 70 S.Ct. 652].)

"Personal service remains the method of choice under the statutes and the constitution. [Citations.] When substituted or constructive service is attempted, strict compliance with the letter and spirit of the statutes is required. [Citation.]" (*Olvera* v. *Olvera* (1991) 232 Cal.App.3d 32, 41 [283 Cal.Rptr. 271].)

Section 415.50, authorizing service by publication specifies this method of service is only warranted when "the party to be served cannot with reasonable diligence be served in another manner specified in this article. . . ." The Judicial Council comment to this section is instructive in defining the showing required before a trial court is justified in finding a party has exercised reasonable diligence in attempting to locate the party to be served. "The term 'reasonable diligence' takes its meaning from the former law: it denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney (See *Vorburg* v. *Vorburg* [(1941) 18 Cal.2d 794] at p. 797 [117 P.2d 875]; *Stern* v. *Judson* (1912) 163 Cal. 726, 736 [127 P. 38]; *Rue* v. *Quinn* [(1902) 137 Cal. 651, at p 657 (70 P. 732)]). A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are likely sources of information, and consequently must be searched before resorting to service by publication." (Cal. Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 415.50, pp. 561-563.) However,

the showing of diligence in a given case must rest on its own facts and "[n]o single formula nor mode of search can be said to constitute due diligence in every case." (*Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327, 333 [150 Cal.Rptr. 855].)

■ We conclude the affidavit in support of the application for service of summons by publication was deficient and misleading, and in light of facts known at the time, failed to demonstrate Beachport exercised reasonable diligence in attempting to learn Kott's address.

On August 31, 1995, the trial court granted Kott's first motion to quash because Beachport could not demonstrate Oxford's offices were Kott's usual place of business, and because Beachport had no evidence Kott had received mail at Oxford's offices. At this hearing court and counsel discussed the fact Kott resided in, and was a citizen of Canada.

Two weeks later on September 14, 1995, Beachport filed an application for publication of summons claiming Kott's address was unknown. In support of this assertion Beachport relied on their investigator's efforts in June to locate Kott in California. However, this investigation occurred prior to Beachport learning Kott was a resident and citizen of Canada. This new knowledge should have provided an explanation for its investigator's singular lack of success in finding any trace of Kott in Los Angeles County. In addition, after Beachport knew Kott was a citizen of Canada, reliance on its investigator's earlier efforts made irrelevant by the new information was patently deficient to demonstrate reasonable diligence.

Beachport made no effort whatsoever to locate an address for Kott in Canada, despite its knowledge Kott was a Canadian national. (Cf. *Quaranta* v. *Merlini*, *supra*, 192 Cal.App.3d 22, 30 [when plaintiffs heard on the street defendant was a seaman residing in Italy plaintiffs located his address through the Registry of Vital Statistics of the City of Florence, Italy].) Moreover, Beachport failed to consult obvious sources to request information on Kott's current business or residence address. It never asked Kott's counsel for Kott's address, despite an exchange of correspondence, numerous telephone conversations between counsel and the fact counsel had office space in the same building. (See, e.g., *Donel, Inc.* v. *Badalian*, *supra*, 87 Cal.App.3d 327, 333 ["More significant and controlling in this case is the fact that Donel failed to take the one step which patently appeared to hold

the most promise for locating Badalian—an inquiry addressed to Attorney Caplow."].)[2]

In addition, Beachport did not ask Oxford's principals for Kott's address. Because Hately and Shriner had already been served and had appeared as defendants in the action, Beachport could have used interrogatories to inquire regarding Kott's address if these persons were otherwise unwilling to volunteer the information.[3]

However, Beachport continued to claim Kott's address was "unknown." In our view Kott's address was "unknown" to Beachport because it chose to ignore obvious avenues for obtaining the information. (*Olvera* v. *Olvera*, *supra*, 232 Cal.App.3d 32, 42 ["It is not actual ignorance that permits resort to service by publication, but the inability to accomplish personal service despite the exercise of reasonable diligence"].) Consequently, we hold as a matter of law Beachport failed to exercise reasonable diligence in attempting to locate Kott prior to seeking court permission to serve him by publication.

## DISPOSITION

The petition for a writ of mandate is granted. The respondent court is directed to vacate its order of January 26, 1996, denying petitioner's motion to quash service of summons and to enter a new and different order granting petitioner's motion to quash service.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[2]This case may have been in an entirely different position had Beachport requested the information and been refused.

[3]Beachport's investigator stated he spoke with an unidentified person at Oxford's offices who "advised" him Kott was no longer associated with the firm and had left no forwarding address or telephone number. There is no way to know from this record whether this person was someone who was in a position to have this or further information regarding Kott's whereabouts.