Filed 8/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | B293330 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK13555A-B) |
| Plaintiff and Respondent, | |
| v. | |
| P.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge. Reversed and remanded with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Father, P.R., appeals the denial of his motion to modify judgment, made pursuant to Welfare and Institutions Code Section 388.[1]  Father claims the Los Angeles County Department of Children and Family Services (DCFS) failed to give him adequate notice of dependency proceedings involving his two children.  DCFS had served him by publication only.  The juvenile court found notice through publication was adequate, because DCFS had exercised reasonable due diligence to find him when his whereabouts were unknown.  We conclude the court erred in finding reasonable due diligence.  We also find the Hague Service Convention applies because Father is a resident of Mexico.  The lack of reasonable due diligence and DCFS's failure to comply with the Hague Service Convention warrants reversal of the judgment and remand to the juvenile court.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Prior Dependency Matters*

In July 2001, Father's eldest three children were subjects of dependency petitions.  In September 2002, family reunification services were terminated due to the parents' "non-compliance" and in January 2004 the children were placed with maternal grandmother.  In April 2009, Father's female companion struck one of the older children on the leg with a belt.  In August 2009, due to Father's failure to provide care and supervision for the children, the court ordered permanent placement for two of the older still-minor siblings.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

B.      *Petition and Detention*

On September 29, 2015, DCFS filed a petition alleging Z.R. and D.R., then ages 4 and 6 respectively, came within the jurisdiction of the juvenile court under section 300. Count (a)(1) of the petition alleged mother burned Z.R. with a hot spoon on the arm and mouth, and also struck Z.R. on the face with a belt. Count (b)(1) of the petition alleged the Z.R. faced substantial risk of suffering serious physical harm because of mother's inability to supervise or protect the child.  Count (j)(1) alleged mother's abuse of Z.R. showed there was potential for abuse of Z.R.'s sibling, D.R.

Mother told DCFS Z.R. and D.R.'s biological Father, P.R., had been deported to Mexico in 2014.  P.R. was named as the presumed father on the DCFS petition.  This was confirmed at the detention hearing.  During the detention hearing on September 29, 2015, the juvenile court removed the children from mother's care and ordered reunification services for her.  The court continued the arraignment hearing for Father to October 2015.  The court ordered DCFS to follow up on contact information they had for Father and to attempt to retrieve a mailing address for him.  At the next hearing, in October, no contact had been made with Father and the hearing was continued to January 2016.

C.      *Combined Jurisdictional and Disposition Hearing*
        *January 7, 2016*

At the combined jurisdictional and disposition hearing, the court found DCFS had shown "due diligence" in attempting to find Father, whose whereabouts were still unknown.  The court found notice had been given as mandated by law.  The court then declared Z.R. and D.R. dependent children under sections 300(a)(b) and 300(a)(b)(j), respectively, and removed them from

3

mother's custody.  The court also limited mother's right to make educational decisions.  Even though the court had just made a due diligence finding, the court continued the disposition hearing as to Father, directing DCFS to follow up on his telephone number in Mexico and on the "Facebook information," referring to information obtained from adult son Joel about Father's Facebook account.

D.     *Father's Disposition Hearing February 23, 2016*

The dependency investigator "followed up" with Z.R. and D.R.'s older half-sibling Joel.  Joel told the investigator he had had no contact with Father for "about 4-5 months" and the last contact he had was through Facebook.  Joel also reported relatives in Riverside had told him they did not have any information as to Father's whereabouts.  The investigator conducted a Facebook search with the "available information," that is, Father's name and birthdate, and was unable to accurately identify Father's Facebook profile because there were "too many [people with the name 'P.R.'] to identify."  The investigator also talked to a staff member at Joel's group home who stated Joel had reported no contact with Father.  At the continued hearing the court ordered that Z.R. and D.R. remain dependents, ordered no reunification services for Father, and permitted only monitored visitation if and when Father made contact with DCFS.

E.     *Twelve-Month Status Review Hearing and Continuances*

For the 12-month status review hearing in February 2017, DCFS submitted a due diligence report as to Father.  The due diligence report revealed searches of 21 sources including governmental agencies, military agencies, and three previous local addresses.  However, it had no mention of any attempt to

4

locate Father through social media or to ask for the help of adult son Joel.

The court further continued the 12-month review hearing to March 2017 for proper notice to Father. In preparation for this hearing, DCFS sent a letter to an address for Father in La Puente, California that was returned "Return to Sender-Attempted-Not-Known-Unable to Forward." DCFS also attempted to visit the address in La Puente, to no avail. Again, DCFS made no mention of attempts to locate Father on social media or to ask for Joel's help in that regard. The court then set a section 366.26 permanency and placement plan hearing.

F.    *Section 366.26 Hearing July 2017 and September 2017*

DCFS prepared a report for the section 366.26 hearing with the two prior due diligence reports that had found four local addresses. DCFS attached an application to notice Father by publication, which the court granted. The court continued the section 366.26 hearing to find adequate placement for the children.

At the September 2017 section 366.26 permanent plan hearing, Father's whereabouts were still unknown to the court. However, older half-sister Blanca appeared and DCFS was ordered to assess her for placement and visitation. DCFS attached a last minute information report showing notice to Father by publication in the *Los Angeles Bulletin*.

At an unmonitored visit On September 18, 2017 with Blanca, Z.R. talked with Father by cell phone. Blanca also told DCFS, as had her brother Joel, she had contact with Father via Facebook. DCFS asked Blanca for and received Father's telephone number in Mexico. But when DCFS tried the number a recording stated the call "could not be completed as dialed."

5

Blanca was then asked by DCFS to provide a mailing address for Father. By the time of the status review hearing in March 2018, however, she had failed to do so. DCFS then conducted another due diligence search that brought about addresses located in California only. Again, as with Joel, DCFS never asked Blanca about Father's Facebook profile nor did DCFS research his whereabouts in Mexico after being given a Mexican telephone number.

G.     *Father's Whereabouts Become Known*

At the hearing on June 14, 2018, the court announced Father's whereabouts had become known. Father had emailed minor's counsel on May 8, 2018 about the possibility of " 'getting the children.' " A new social worker contacted Father at his telephone number in Mexico, different than any previously provided number, and Father said he was interested in custody. Father stated he had heard from Blanca that the children were being moved towards adoption and he had trusted her to "take care of things." He provided his address in Tijuana and stated he was "disappointed in his daughter Blanca" because she had not taken care of things.

The court ordered counsel to reach out to Father and determine if he wished to be represented. On July 2, 2018, counsel advised the court he was able to make contact with Father who wished to be represented. Counsel asked the court to allow him to specially appear and allow him time to research any potential *Ansley* or Hague Service Convention issues.

H.    *Father's section 388 petition*

On July 18, 2018, Father filed a section 388 petition.  The section 388 petition asked the court to vacate the jurisdictional and dispositional orders as they pertained to Father for lack of notice.  At the continued hearing on August 16, 2018, the court denied the petition for failing to state "even a prima facie showing that relief is warranted." Counsel was also appointed for Father.  The court stated it was unreasonable to ask the department to attempt to locate Father in Mexico "with no further information as to his whereabouts."  The court emphasized Father had no contact with the children Z.R. and D.R. a year before the dependency hearings and no contact for the two years since the hearings began.

Father timely appealed.

## DISCUSSION

Father contends the court violated his right to notice because DCFS could have found him through Facebook or by questioning the mother.  He argues all orders pertaining to him must be reversed.  He further argues all orders pertaining to him should be reversed for failure to comply with the Hague Service Convention in order to acquire personal jurisdiction over him.

A.    *DCFS's efforts did not constitute reasonable due diligence.*

A judgment is void for lack of personal jurisdiction over the person where there is no proper service of process on or appearance by a party to the proceedings.  This fundamental principle of jurisdiction applies to juvenile dependency proceedings.  (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 (*David*).)  A section 388 petition is the correct method for raising a "due process challenge based on lack of notice." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189 (*Justice).*)

7

A parent's interests in the "companionship, care, custody, and management of his or her children" are one of the most fundamental recognized civil rights. (*Stanley v. Illinois* (1972) 405 U.S. 645, 651.) Therefore, before depriving a parent of those interests the parent must be given adequate notice and an opportunity to be heard. (*In re B. G.* (1974) 11 Cal.3d 679, 688–689.) Due process notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 (*Mullane*).) Here, DCFS did not give reasonably calculated notice.

*In re B. G.* is a good starting point. There, mother was a Czech national living in Czechoslovakia when her children in California were placed in foster care after their father's death. DCFS failed to ask the grandparents about mother's whereabouts when it was aware they were in contact with her over the previous two years and had her address. (*In re B. G., supra*, 11 Cal.3d at p. 689.) Neither did DCFS request help from the "Czech Embassy or through international organizations" to send notice to mother. (*Ibid.*) Our Supreme Court held "total absence of notice in any form cannot comport with the requirements of due process." (*Ibid.*; see *Mullane, supra,* 339 U.S. at pp. 314-315.)

Similarly, in *In re Arlyne A.* (2000) 85 Cal.App.4th 591 (*Arlyne*), DCFS filed a dependency petition on behalf of five minors. Father could not be located. One of the minors stated the Colton police knew where father worked and grandmother told the court the Colton police department had father's " 'address, his Social Security number, his work address, and everything . . . .' " (*Id.* at p. 595.) Moreover, more timely

8

information supplied by both Arlyne's attorney and the child indicated both parents were living in Rialto. (*Id.* at p. 598.) The court ordered DCFS to follow up on the information and continued the hearing. DCFS did not produce the Colton police report. The juvenile court found due diligence. (*Id.* at p. 595.)

In holding the juvenile court's finding of due diligence was not supported by the record, the appellate court emphasized that DCFS had searched standard avenues available to help locate a missing parent, but failed to search the "specific ones most likely, under the unique facts known to the Department, to yield appellant's address." (*Arlyne, supra,* 85 Cal.App.4th at p. 599.) DCFS had failed to follow the simplest step of calling directory assistance in Rialto. (*Id.* at pp. 598–599.) It also failed to "thoroughly and systematically" follow through on the child's tip by asking the Colton police for its report. (*Id.* at p. 599.) The court also determined it was "unreasonable" to limit the search to a five-year old Fontana address when DCFS knew the last address was in Colton. (*Ibid.)*

Here, although DCFS did not know for sure it could obtain Father's address from his eldest son Joel, there was an actual possibility DCFS could have located Father or valid contact information had it asked for help from Joel in accessing Father's Facebook account. Moreover, Blanca had the same Facebook information which DCFS inexplicably failed to pursue. Both of Father's older children were cooperative and available, yet DCFS did not take advantage of their Facebook access to Father to provide notice reasonably calculated to apprise him of the proceedings.

9

Instead, rather than work through Joel and Blanca, DCFS searched almost two dozen United States government databases, well aware Father had been deported to Mexico. Not once did DCFS follow the most likely means of being able to actually identify Father and gain his contact information to notify him. (*Arlyne, supra,* 85 Cal.App.4th at p. 599.)

The trial court found it was unreasonable to ask the department to locate Father in Mexico "with no further information as to his whereabouts." We disagree. It was not unreasonable to ask DCFS to locate father in Mexico because DCFS simply could have asked Joel or Blanca to show it the correct Facebook profile of Father. This is not a case where we have no information as to Father's whereabouts. This is a case where there were leads from cooperative family members. The lack of reasonable due diligence by DCFS during its investigation is the reason there was no "further information as to his whereabouts."

Significantly, the use of social media to contact parents whose whereabouts are unknown was not a new concept to DCFS as it had already attempted its own unassisted Facebook search using only Father's name and birthdate. Following up with Joel and Blanca would have been the most likely avenue of success in locating father under the circumstances. (*Arlyne, supra,* 85 Cal.App.4th at p. 599.)[2]

---

[2] It is also unexplained why DCFS did not follow up with mother when she told the juvenile court she had taken the children to visit Father in Tijuana, where he was living after being deported.

B.    *Notice through publication is invalid because we determine there was no due diligence inquiry.*

Service by publication is sufficient to meet the requirements of jurisdiction only when a person's whereabouts remain unknown despite reasonably diligent inquiry.  (*David, supra*, 21 Cal.App.4th at p. 1016; *Donel, Inc. v. Badalian* (1978) 87 Cal.App.3d 327, 332.)  "The term 'reasonable diligence' as used to justify service by publication 'denotes a thorough, systematic investigation and inquiry conducted in good faith . . . .' " (*David, supra*, 21 Cal.App.4th at p. 1016.)  Where the party conducting the investigation ignores the most likely means of finding the defendant, the service is invalid, even if the affidavit of diligence is sufficient.  (*Ibid.; see also Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1137–1139 [same].)

As we have found, DCFS ignored the most likely means of finding Father.  DCFS facially complied with the requirements of searching government databases, mailing notice to previous known addresses, and following up at said addresses.  However, DCFS did not take steps a reasonable person would have if it were truly trying to give notice, such as asking for help from the half-sibling(s) who told the department they were in contact with Father through social media.  Service by publication was invalid.

C.    *Because the Hague Service Convention applies and its requirements have not been met, automatic reversal is required.*

Error in dependency proceedings is typically subject to harmless error review.  (*Justice P.*, *supra*, 123 Cal.App.4th at p. 193; *In re A.D.* (2011) 196 Cal.App.4th 1319, 1325–1326.)  However, because Father is a resident of Mexico, DCFS was obligated to comply with the requirements of the Hague Service

11

Convention. (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698.) The Hague Service Convention is intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. (*Ibid.*) It requires each participating country to designate a "Central Authority" for receipt of or requests for service of process. (*In re Alyssa F.* (2003) 112 Cal.App.4th 846, 852 (*Alyssa*).)

The United States and Mexico are both signatories to the Hague Service Convention. (*In re Vanessa Q.* (2010) 187 Cal.App.4th 128, 134 (*Vanessa*).) The Hague Service Convention applies to service on a resident of Mexico of a civil complaint filed within the United States, including petitions "brought under family law or juvenile dependency law." (*Ibid.*; see also Code Civ. Proc., § 413.10, subd. (c).) Notice of jurisdictional and disposition hearings must be served according to the Convention's guidelines. (*In re Jennifer O.* (2010) 184 Cal.App.4th 539, 547; *In re Jorge G.* (2008) 164 Cal.App.4th 125, 134–135.) Notice is required to acquire "personal jurisdiction" over the nonresident parent. (*Alyssa, supra,* 112 Cal.App.4th at pp. 851–852.) Failure to comply with the Hague Service Convention would invalidate all proceedings with respect to Father, unless an exception applies. (*Ibid.*)

Here, it is undisputed that there was no compliance with the Convention as to notice for the jurisdictional and disposition hearings. DCFS proffers two exceptions to the requirements of the Hague Service Convention, none of which apply here. First, the Hague Service Convention does not apply when the whereabouts of the person in question are unknown, despite a

reasonable due diligence search.  (*In re R.L.* (2016) 4 Cal.App.5th 125, 147.)  Here, we have determined DCFS failed to conduct a reasonable due diligence search that was a " 'thorough, systematic investigation and inquiry conducted in good faith . . . .' "  (*David, supra*, 21 Cal.App.4th at p. 1016; *In re R.L.*, at p. 147.)  Without reasonable due diligence, service is governed by the Hague Service Convention.  (*Ibid.; Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1160–1161.)

Second, a general appearance by a party is equivalent to personal service of summons on such party and jurisdiction of the court can be acquired by way of a general appearance.  (*Vanessa, supra*, 187 Cal.App.4th at p. 135; *In re Jennifer O., supra*, 184 Cal.App.4th at p. 548.)  The determination of special appearance versus general appearance is based on the "character of the relief sought," not by statements of intention of the party.  (*Slaybaugh v. Superior Court* (1977) 70 Cal.App.3d 216, 221.)  A general appearance occurs when the party takes part in the action and " 'in some manner recognizes the authority of the court to proceed.' "  (*Vanessa,* at p. 135.)

The record shows counsel first appeared for Father on July 2, 2018 as "special counsel" and requested a continuance to review the files to determine whether to file a section 388 petition or other petition related to notice issues. On July 18, 2018, counsel then filed a motion pursuant to section 388, asking the court to:  "void and vacate all findings and orders pertaining to the adjudication hearing on January 7, 2016 and the disposition hearing on February 23, 2016 as to Father and start de novo with arraignment on the petition with counsel appointed for Father, helping him navigate the complexities of dependency court and advocating for him to regain custody."

DCFS argues counsel's July 2 appearance constitutes a general appearance and thus cures any claim of lack of personal jurisdiction or defective service of process. We do not agree. Counsel could not have been clearer that he was making a special appearance and requesting a continuance on behalf of father to investigate and pursue notice issues. Father in no way acquiesced to the court's personal jurisdiction over him.

## DISPOSITION

We reverse all orders as to Father only and remand with instructions to commence de novo with arraignment and adjudication after providing Father with proper notice.

**CERTIFIED FOR PUBLICATION**

STRATTON, J.

We concur:

GRIMES, ACTING P. J.

WILEY, J.

14