Filed 2/14/18; pub. order 2/27/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INVERSIONES PAPALUCHI S.A.S. et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ROBINSON HELICOPTER COMPANY, INC., et al., Real Parties in Interest. | B285092 (Los Angeles County Super Ct. No. BC514477) |

ORIGINAL PROCEEDINGS; petition for writ of mandate. David Sotelo, Judge. Petition granted.

Baum, Hedlund, Aristei & Goldman, Ronald L.M. Goldman, A. Ilyas Akbari, for Petitioners.

No appearance for Respondent.

Perkins Coie, Ronald A. McIntire, Max L. Rothman, Christopher Ledford, for Real Party in Interest Honeywell International Inc.

Michaelis, Montanari & Johnson, Garry L. Montanari, for Real Party in Interest Rolls-Royce Corporation.

Tim A. Goetz and Cathrine E. Tauscher, for Real Party in Interest Robinson Helicopter Company, Inc.

_____

A helicopter crash in Colombia on July 12, 2011, killed the pilot and passenger.  The surviving heirs filed a wrongful death action against Robinson Helicopter Company, Inc., Honeywell International, Inc., and Rolls-Royce Corporation. Robinson Helicopter, Honeywell, and Rolls-Royce (collectively, cross-complainants) subsequently filed nearly identical cross-complaints against a Colombian entity and Roes 1-25.  Each cross-complainant later designated petitioners Inversiones Papaluchi S.A.S. and Inversiones Protech S.A.S. (collectively, petitioners) as Roe cross-defendants.

Petitioners challenge the respondent court's order denying their motion to quash service of summons and dismiss the cross-complaints.  (Code Civ. Proc., §418.10,

2

subd. (c).)[1] An alternative writ was issued directing the respondent court to vacate its order, or to show cause before this court why relief sought in the petition should not be granted. The respondent court elected not to comply with the alternative writ. Honeywell and Rolls-Royce filed a joint return, Robinson Helicopter filed a joinder to the return, and petitioners filed a reply.[2]

The issues before this court are whether: (1) Robinson Helicopter timely attempted service of its cross-complaint on petitioners within the three-year statutory period; and (2) Honeywell and Rolls-Royce properly served petitioners in Colombia by Federal Express and email. We conclude Robinson Helicopter's cross-complaint should have been dismissed because service was attempted beyond the three-year statutory period, and Robinson Helicopter offers no valid exception to this rule. We further conclude that Honeywell and Rolls-Royce failed to properly serve petitioners pursuant to the Hague Service Convention. Therefore, petitioners' motion should have been granted and the cross-complaints dismissed.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Honeywell and Rolls-Royce's joint motion for judicial notice filed on November 6, 2017, and their second joint motion for judicial notice filed on December 5, 2017, as well as petitioners' second motion for judicial notice filed November 20, 2017, are denied. (Evid. Code, §§ 452, 459.)

## I. Robinson Helicopter

Petitioners contend the respondent court erred in not dismissing Robinson Helicopter's cross-complaint for failure to complete service on petitioners within the statutory three-year period. We agree.

### A. Factual Background

On April 21, 2014, Robinson Helicopter filed its cross-complaint for indemnification and declaratory relief against a Colombian entity, Inversiones Agroindustriales El Paraiso S.A.S. (IAP) and Roes 1-25.[3] On July 18, 2016, cross-complainants discovered that petitioners were formed from the assets of IAP. On November 30, 2016, IAP served notice on cross-complainants that its corporate charter had been cancelled and "is no longer permitted to operate in any capacity or events. Therefore, [IAP] will no longer be able to defend itself in this matter." On January 19, 2017, Robinson Helicopter substituted petitioners for their respective Roes 1 and 2. On March 3, 2017, the respondent court granted Robinson Helicopter's ex parte application for an order extending time to serve its cross-complaint to July 31, 2017. On May 17, 2017, Robinson Helicopter filed proofs of service of summons on both petitioners in the respondent court, stating it emailed and shipped the summons, cross-

---

[3] The other cross-defendants were dismissed.

4

complaint, and other documents by Federal Express and email on May 12, 2017.

### B. Mandatory Dismissal

A plaintiff must serve "a defendant within three years after the action is commenced against the defendant." (§ 583.210, subd. (a).) "[A]n action is commenced at the time the complaint is filed." (*Ibid.*) Dismissal is mandatory where a plaintiff fails to serve a defendant within the statutory time limits. (§ 583.250, subd. (b).) The three-year rule applies where the defendant seeking dismissal was served as a Doe defendant named in the original complaint, later amended to show his or her true name. (See *Higgins v. Superior Court* (2017) 15 Cal.App.5th 973, 982; *Lesko v. Superior Court* (1982) 127 Cal.App.3d 476, 481–482.) In short, a plaintiff has three years from the date of filing the complaint to identify and serve a Doe defendant. (*Higgins v. Superior Court*, *supra*, at p. 982.)

Here, Roes 1-25 were designated as cross-defendants in Robinson Helicopter's original cross-complaint filed on April 21, 2014. Petitioners were later designated as Roes 1 and 2 on January 19, 2017. Service of the summons and cross-complaint on petitioners was due on April 21, 2017, three years after the original cross-complaint was filed. Robinson Helicopter did not attempt to serve petitioners until May 12, 2017, 21 days after the three-year service deadline.

Service requirements "are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.250, subd. (b).) The Legislature has articulated four conditions that toll the time for service. (§ 583.240.)[4] The conditions "must be construed strictly against the plaintiff." (*Shipley v. Sugita* (1996) 50 Cal.App.4th 320, 326). Although raised by petitioners in the respondent court, Robinson Helicopter failed to meet its burden of providing argument or establishing any facts bringing the case within section 583.240. (See *Perez v. Smith* (1993) 19 Cal.App.4th 1595, 1597.)

Before the respondent court, Robinson Helicopter argued that petitioners were barred from seeking dismissal under the doctrine of equitable estoppel. (§ 583.140 ["Nothing in this chapter abrogates or otherwise affects the principles of waiver and estoppel"]; *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431, 437–439 [doctrine of equitable estoppel is applicable to motions to dismiss for failure to effectuate service within three years].) Under this doctrine, "If a trial court finds statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction, and there is reasonable reliance, estoppel must be available to prevent defendant

---

[4] The Legislature has also carved out exceptions to mandatory dismissal. (§ 583.220 ["the defendant enters into a stipulation in writing or does another act that constitutes a general appearance in the action"].) None of these exclusions apply here.

from profiting from his deception." (*Tejada v. Blas* (1987) 196 Cal.App.3d 1335, 1341.) Robinson Helicopter contended petitioners' counsel originally said that he could and would accept service on behalf of petitioners, therefore "lulling" Robinson Helicopter "into a false sense of security." That assertion is belied by the record.[5]

It was Honeywell's counsel who, on January 12, 2017, reached out to petitioners' counsel, informing him of the filing of its Roe amendments (on January 11, 2017) to its cross-complaint, and asking him to accept service on behalf of petitioners. As previously stated, Robinson Helicopter did not designate petitioners as Roes 1 and 2 until January 19, 2017. On January 23, 2017, Honeywell's counsel sent a follow-up email to petitioners' counsel, who responded he would follow up with his clients. On February 14, 2017, petitioners' counsel informed Honeywell that he would not accept service on behalf of his clients.

There is no evidence that Robinson Helicopter's counsel ever communicated with petitioners' counsel about service. Petitioners' counsel also never stated at any point that he would accept service on petitioners' behalf—rather he said he would ask his clients. Within a month of the original correspondence, petitioners' counsel responded to Honeywell that he would not accept service on petitioners' behalf. At

---

[5] Robinson Helicopter solely relies on a declaration of Honeywell's counsel (Ronald L. McIntire) filed in support of Honeywell's ex parte application for extension of time to serve the cross-complaint on March 3, 2017.

this point, each cross-complainant had a little over two months to serve petitioners before the three-year statutory deadline.  Honeywell was able to attempt service on petitioners (albeit by unauthorized means, as discussed below) within the statutory time period, on March 22, 2017.  Rolls-Royce similarly was able to attempt service on April 12, 2017.  Robinson Helicopter had the same opportunity to attempt timely service as the other cross-complainants, but it failed to do so without sufficient excuse.  Moreover, Robinson Helicopter's argument that petitioners should be estopped from asserting untimely service due to petitioners' counsel's delay in refusing to accept service fails, because Robinson Helicopter was at all times represented by counsel. (See *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1210 ["'[T]he law "particularly" disfavors estoppels "where the party attempting to raise estoppel is represented by an attorney at law"'"].)  In its brief before this court, Robinson Helicopter fails to articulate any facts or argument in support of equitable estoppel.  We conclude the respondent court was required to dismiss Robinson Helicopter's cross-complaint for failing to serve petitioners within the three-year statutory period.

## II.  Honeywell and Rolls-Royce

Petitioners contend the respondent court lacked jurisdiction over them as they were not properly served in compliance with the Hague Service Convention.  We

8

conclude that Honeywell and Rolls-Royce did not properly effectuate service on petitioners by Federal Express or by email pursuant to the Hague Service Convention.[6]

## A. Factual Background

Honeywell filed proofs of service of summons on both petitioners in the respondent court on March 29, 2017. Rolls-Royce filed its proofs of service on April 25, 2017. The proofs of service filed by Honeywell and Rolls-Royce checked a box indicating that petitioners were served "by other means."[7]  Honeywell and Rolls-Royce stated they served each petitioner by email and Federal Express pursuant to section 413.10, subdivision (c). The proofs of service designated a Colombian address for each petitioner.

## B. Hague Service Convention

Section 413.10, subdivision (c), provides that when the person is to be served outside the United States, a summons must be served as provided by the Code of Civil Procedure,

---

[6] Because the respondent court was required to dismiss Robinson Helicopter's cross-complaint, any further analysis will only apply to the remaining cross-complainants, Honeywell and Rolls-Royce.

[7] Cross-complainants did not check the box that referenced personal service, substituted service, or service by mail and acknowledgment of receipt of service.

as directed by the trial court, "or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory.  These rules are subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention)."  "Failure to comply with the Hague Service Convention procedures voids the service even though it was made in compliance with California law.  [Citation.]  This is true even in cases where the defendant had actual notice of the lawsuit. [Citations.]"  (*Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1136 (*Kott*); see also *In re Vanessa Q.* (2010) 187 Cal.App.4th 128, 135 [defective service of process is not cured by actual notice of the action]; *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 415; *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1049 ["[t]he fact that the person served 'got the word' is irrelevant"].)

The Hague Service Convention is a multilateral treaty formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law to revise parts of the previously-adopted Hague Service Conventions on Civil Procedure with respect to service of process abroad. (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698 (*Volkswagenwerk*); *Kott, supra*, 45 Cal.App.4th at p. 1133.)  The Hague Service Convention "was intended to

10

provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (*Volkswagenwerk, supra*, at p. 698.) The United States was one of the original signatories, and the Hague Service Convention went into force here in 1969. *(Kott, supra,* at pp. 1134–1135.) The United States Supreme Court held that "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." (*Volkswagenwerk, supra*, at p. 699.)

Article 1 of the Hague Convention addresses the scope of its applicability: "'The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' [Citation.]" (*Volkswagenwerk, supra*, 486 U.S. at p. 699.) In interpreting the phrase "occasion to transmit," the United States Supreme Court stated: "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." (*Id.* at p. 700.) Thus, service of process is governed by the Hague Service Convention and, to the extent not inconsistent with the Convention, by the Code of Civil Procedure. (§ 413.10, subd. (c); *Volkswagenwerk, supra*, at pp. 699, 670; see also *Brockmeyer v. May* (9th Cir. 2004) 383 F.3d 798, 803–804 (*Brockmeyer*).)

11

"The primary means by which service is accomplished under the [Hague Service] Convention is through a receiving country's 'Central Authority.' The Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. [Citation.] The receiving country can impose certain requirements with respect to those documents (for example, that they be translated into the language of that country.) [Citation.] If the documents comply with applicable requirements, the [Hague Service] Convention affirmatively requires the Central Authority to effect service in its country." (*Brockmeyer*, *supra*, 383 F.3d at p. 801.) Honeywell and Rolls-Royce did not attempt service through Colombia's Central Authority. They chose other methods—Federal Express and email to petitioners' registered addresses in Colombia. Petitioners challenge the validity of service, contending neither form of service complies with the Hague Service Convention.

## 1.  Service by Federal Express

The Hague Service Convention authorizes other methods of sending judicial documents to foreign countries. As pertinent here, Article 10(a) provides the Hague Service Convention "shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad," "[p]rovided the State of destination does not object." Colombia has not objected to Article 10(a).

The United States Supreme Court has recently held that Article 10(a) of the Hague Service Convention does not prohibit service by mail. (*Water Splash, Inc. v. Menon* (2017) __ U.S. __ [137 S.Ct. 1504, 1507] (*Water Splash*) [resolving a question that has been divided both federal and California courts].) However, the court cautioned "this does not mean that the [Hague Service] Convention affirmatively *authorizes* service by mail. Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law. (See *Brockmeyer,* [*supra,*] 383 F.3d at [pp.] 803–804.)" (*Id.* at p. 1513.) Thus, the Supreme Court adopted the Ninth Circuit's approach in *Brockmeyer*, which required that the receiving state not object to service by mail and that the forum state in which the action is pending to affirmatively authorize service by international mail.

In *Brockmeyer*, the Ninth Circuit explained the relationship of Article 10(a) and the procedural law of the forum state as applied to service by mail: "Article 10(a) does not itself affirmatively authorize international mail service. It merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal channels if the 'State of destination' does not object to their use. . . . Article 10(a), 'It

should be stressed that in permitting the utilization of postal channels, . . . the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.*' [Citations.]  [¶]  In other words, we must look outside the Hague Convention for affirmative authorization of the international mail service that is merely not forbidden by Article 10(a).  Any affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed." (*Brockmeyer, supra,* 383 F.3d at pp. 803–804.)  Therefore, the validity of Honeywell's and Rolls-Royce's service by Federal Express must come from California law.

Under California law, there are two applicable sections of the Code of Civil Procedure that involve service by mail. Section 415.30 requires that mailing include a notice and acknowledgment of receipt to be signed by the defendant and a return envelope, postage prepaid, addressed to the sender. Honeywell and Rolls-Royce do not claim to have served petitioners by mail with notice and acknowledgment of receipt under section 415.30.  Similarly, section 415.40 provides, "A summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt."  Honeywell and Rolls-Royce submitted proofs of service for the mailing via

14

Federal Express to petitioners at their registered addresses. However, neither Honeywell or Rolls-Royce presented any evidence that either of the mailings required a return receipt. The proofs of service presented do not include any returned receipts confirming that petitioners actually received the service documents. (*Bolkiah v. Superior Court* (1999) 74 Cal.App.4th 984, 1001 [proof of service by mail on out-of-state defendants must strictly comply with the requirements of section 417.20, subdivision (a)].) Honeywell and Rolls-Royce had the burden to prove the facts required to establish the validity of service on petitioners, but failed to do so. (*Summers v. McClanahan, supra,* 140 Cal.App.4th at p. 413; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439–1440.)

In support of service by Federal Express, Honeywell and Rolls-Royce rely on section 413.10, subdivision (c), which permits service of summons outside of the United States: "if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served . . . ." Honeywell and Rolls-Royce contend that Colombia law authorizes service by Federal Express, and therefore service by Federal Express on petitioners was proper. This contention is contrary to the United States Supreme Court holding that in order to fully comply with the Hague Service Convention, the forum state (California) must *affirmatively* authorize service by international mail. Section 413.10, subdivision (c), does not affirmatively authorize service by

mail, let alone by Federal Express.  We conclude that the attempted service by Federal Express did not constitute valid service of process under California law, and as a result, did not comply with the Hague Service Convention pursuant to Article 10(a).

## 2. Service by Email

Petitioners challenge service by email under Article 19 of the Hague Service Convention.  Article 19 provides, "To the extent that [the law of the foreign country] permits methods of transmission, *other than those provided for in the preceding Articles*, of documents coming from abroad, for service within its territory, the present [Hague Service] Convention shall not affect such provisions."  (Italics added.)  Because Article 10(a) addresses service by mail, our Article 19 analysis is limited to service by email under Colombia law.

The trial court denied petitioners' motion to quash because defendants "proffer undisputed evidence that Colombia law authorizes email service on corporations enrolled in the commercial register via their email addresses recorded in the register.  [Citation.]  Therefore, email service was permitted.  Email service was reasonably calculated to give actual notice, especially given that [petitioners] (specifically) appear now."  Moreover, "There is no dispute that [petitioners] are Colombia corporations enrolled in the commercial register or that cross-complainants transmitted

16

the summons and [cross-]complaint to [petitioners'] recorded email addresses." The court relied on the declaration of William Araque-Jaimes, which was submitted in Honeywell's opposition to the motion to quash. Araque-Jaimes explained in his declaration that Colombia's General Code of Procedure articles 291 and 292 provide for service of process by email.[8]

Although email service is permitted in Colombia, cross-complainants failed to record acknowledgment of receipt of the email service in the respondent court's docket pursuant to Colombia law. General Code of Procedure articles 291 (personal notification) and 292 (notification by notice) require an acknowledgment of email receipt filed in the court docket: "When the e-mail address of the person to be notified is known, the notice and the procedural ruling being notified may be sent . . . by the interested party by e-mail. It shall be considered that the recipient received the notice when the sender receives acknowledgment of receipt. In this case, it shall be recorded in the docket, and a print of the message shall be attached thereto."

Honeywell and Rolls-Royce concede that they "never received an e-mail acknowledgement of service and therefore did not file one." Honeywell only included copies of the emails sent to petitioners demonstrating service of summons, cross-complaint, and other documents in its

_____

[8] In our alternative writ, we granted petitioners' request to take judicial notice of Colombia's General Code of Procedure articles 289–292.

17

opposition filed in the respondent court on August 9, 2017. These emails were filed almost five months after Honeywell attempted service and were not included in its original proof of service filed on March 29, 2017. (§ 583.210, subd. (b) [proof of service of the summons must be filed within 60 days after the time the summons and complaint must be served on the defendant].) At no point did Rolls-Royce file any copies of the emails sent to petitioners in the respondent court. Accordingly, neither cross-complaint was properly served by email on petitioners pursuant to Colombian law, as required by Article 19 of the Hague Service Convention.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its August 28, 2017 order denying the motion to quash service of summons and dismissing the cross-complaints, and issue an new order granting the motion to quash and dismissing the cross-complaints without prejudice (§ 581, subds. (b)(4), (g)).  Petitioners shall recover their costs in this proceeding.


KRIEGLER, Acting P.J.

We concur:



BAKER, J.



DUNNING, J.*

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INVERSIONES PAPALUCHI S.A.S. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> ROBINSON HELICOPTER COMPANY, INC., et al., <br><br> Real Parties in Interest. | B285092 <br><br> (Los Angeles County Super. Ct. No. BC514477) <br><br><br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on February 14, 2018, was not certified for publication in the Official Reports. Upon petitioners' request and for good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

1

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.


_____  _____  _____

KRIEGLER, Acting P.J.   BAKER, J.        DUNNING, J.*

---

\* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.