Filed 2/11/25  Watson v. Diet Madison Avenue CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RALPH M. WATSON, | B332352 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC707278) |
| v. | |
| DIET MADISON AVENUE et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Michael W. Ayotte for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, Andrea K. Williams and Hannah Brown Goehring for Defendants and Respondents.

_____

Ralph Watson filed an action for defamation against anonymous actors he contends are responsible for posting defamatory statements on social media accounts, leading his employer to fire him. Watson was unable to learn the identities of the anonymous parties or to convince the trial court that they had made general appearances, and the court eventually dismissed Watson's complaint for failure to serve defendants within three years. Watson appeals the dismissal order, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Dispute

In January of 2018, plaintiff Ralph Watson was the Chief Creative Officer in the Boulder, Colorado office of a large advertising agency and an advertising professional with years of experience handling large national accounts. Defendant Diet Madison Avenue (DMA) is an organization whose purpose is "[e]xposing sexual harassment & discrimination in ad agencies . . . cuz HR won't."

Beginning in January of 2018, DMA's Instagram account published a series of posts accusing individuals associated with several advertising agencies of sexually harassing female employees. Although the account was private and could only be accessed by those approved by its administrators, DMA's posts "were published to over 7500 followers of the account and republished to thousands more by the advertising trade press, who were actively reporting on DMA's actions at the time." On January 19, 2018, DMA published a post describing Watson as a "predator" who "targeted and groomed [women] . . . because they were young & just starting out their careers." On January 25, 2018, Watson's employer held a "town hall" meeting to

"address the toxic social media environment" and "discuss the agency's point of view and response thereto." That same day, DMA published an Instagram post referring to the agency's "townhall" and asking whether, to "support the Me Too campaign," Watson's employer would be "letting go of Ralph AKA the unrepenting serial predator."

On February 2, 2018, Watson was fired from his job. Prior to being fired, Watson's employer had assured him it was not aware of any "credible and/or substantiated claims of any sexual harassment" at the firm. For his part, Watson insists he "never sexually harassed anyone and/or created a hostile work environment" anywhere he worked and that he "has never been disciplined for any type of improper behavior, including sexual harassment and/or for creating a hostile work environment."

## B. Watson Filed His Complaint

On May 22, 2018, Watson filed a complaint against DMA and fictitiously-named defendants "Jane Doe 1," "Jane Doe 2," and Does 3 through 100. The complaint alleged causes of action for defamation, intentional interference with contract, intentional and negligent interference with prospective economic relations. The complaint identified Jane Does 1 and 2 as Los Angeles County residents, both employed in advertising, who are among "the 17 individuals directly behind DMA." The remaining Doe defendants, including defendant Doe 3, were alleged to be "responsible in some manner" for the occurrences described in Watson's complaint.

## C. Watson Attempted to Identify Defendants

After filing the complaint, Watson's counsel sent a copy of the summons and complaint to DMA in a message directed to its website and to its Instagram and Twitter accounts. Apparently

3

in response to those messages, DMA deleted its Instagram and Twitter accounts and wiped their content. When contacted by representatives of the trade and general press, DMA stated it knew about the lawsuit and had retained counsel, and it solicited donations to a legal defense fund.

On July 12, 2018, Watson filed an unsuccessful ex parte application for an order deeming DMA to have been served with Watson's summons and complaint. After the application was denied, Watson's counsel applied ex parte on July 30, 2018, for an order allowing him to serve business records subpoenas on Facebook, Instagram and Google in order "to ascertain the identities of the anonymous individuals behind DMA," and for leave to serve DMA by publication pursuant to Code of Civil Procedure section 415.50.[1] The court denied the application for publication, but granted Watson leave to serve business records subpoenas directed to DMA's social media accounts.

Watson gave DMA notice of the third-party subpoenas by e-mailing DMA and posting a message on its Instagram account. On August 21, 2018, "Defendant Doe 1"[2], appearing specially, made an ex parte application for an order extending her time to oppose Watson's third-party subpoenas. The court granted the application and extended the return date of the subpoenas from August 31 to September 17, 2018. On September 12, "Defendant Doe 3", specially appearing for herself and on behalf of DMA, filed a motion to quash Watson's third-party subpoenas and for a

---

[1]     Further references to statutes are to the Code of Civil Procedure unless otherwise stated.

[2]     We assume specially appearing "Defendant Doe 1" is the same individual named in Watson's complaint as "Jane Doe 1."

4

protective order. In support of the motion Doe 3 argued that Watson had not shown grounds to invade her first amendment right to anonymous speech, and that DMA was a "non-existent" or "non-jural entity" that was incapable of being sued or entering a general appearance.

Watson opposed defendants' motions to quash, and moved for an order deeming the motions to quash subpoenas to be a general appearance by Doe 3 and DMA.

On February 1, 2019, the court denied defendant's motion to quash, but issued a protective order limiting the scope of Watson's subpoenas. The court also denied Watson's motion to deem the motion to quash a general appearance in the action. The court noted that Watson's expressed purpose in serving the subpoenas was not to discover evidence going to the merits of his claims, but rather to discover the identities of the Doe defendants so he could serve them. Citing *1880 Corporation v. Superior Court* (1962) 57 Cal.2d 840, 843, the trial court held that defendants were entitled to object to Watson's subpoenas to protect their first amendment rights to anonymous speech, and "should not be penalized for . . . invoking the procedural protections enacted to give parties and non-parties an opportunity to object to unmasking subpoenas like those at issue here."

On February 25, 2019, Watson filed a first amended complaint. The substantive difference from the original complaint is that the amended complaint alleged DMA posted an additional defamatory statement on May 24, 2018, and added a new fourth cause of action for civil conspiracy against the individual defendants.

5

On September 9, 2019,Watson also filed a motion for an order modifying the February 1 protective order. In support of its motion Watson represented that the subpoenaed third parties had produced no responsive records, and he asked that the scope of the subpoenas be expanded. Doe 3, for herself and DMA, opposed Watson's motion. Their argument was, in substance, that Watson should not be allowed another bite at the apple merely because his initial subpoenas were inartfully drafted, and that his proposed expansion of the subpoenas threatened defendants' first amendment rights. On October 30, 2019, the court denied Watson's motion to modify the protective order.

### D. Watson Attempted Substitute Service

On June 20, 2022, Watson attempted to serve DMA by substitute service on Louis Dorny, an attorney who had attended hearings and signed pleadings as counsel for DMA and Doe 3. Watson's process server was unable to hand the summons and complaint to Dorny personally. Instead, he left the papers with a security guard in the building where Dorny had his office, and later mailed copies addressed to Dorny. Watson repeated this process on June 27, this time purporting to serve Doe 3. Almost two months later, on August 15, 2022, Watson filed proofs of service. On September 6, 2022, defendants filed a motion to quash service, which Watson opposed. The court granted the motion to quash on May 11, 2023, finding that Watson had failed to establish that Dorny was the agent for service of process of either defendant, and that leaving copies of the summons and complaint with a security guard in a 52-story office building did not comply with the statutory requirements for substitute service.

### E. The Order to Show Cause and Dismissal

As part of its order granting defendants' motion to quash, the court also issued an order to show cause, directed to Watson, why his action should not be dismissed for failure to serve the summons and complaint within three years of commencing the action. On June 21, 2023, the court held a hearing on the order to show cause. Over Watson's objection, the court found that Watson had not served the summons and complaint within the time allowed by statute, and that the statutory excuse Watson relied on – that defendants had made general appearances – was not applicable. The court entered an order dismissing the first amended complaint, without prejudice.

Watson filed a timely notice of appeal.

### DISCUSSION

Watson makes two arguments in support of his contention that the trial court erroneously dismissed his amended complaint. First, he argues that he effected substitute service on defendants in June of 2022, by delivering the summons and complaint to Dorny. Second, he argues that both DMA and Doe 3 defendants made general appearances. For the reasons set out below, we reject both these contentions, and conclude the trial court acted within the scope of its discretion when it dismissed Watson's first amended complaint.

A. **Standard of Review**

Section 583.210, subdivision (a), provides that a "summons and complaint shall be served . . . within three years after the action is commenced." "The three-year rule applies where the defendant seeking dismissal was served as a Doe defendant named in the original complaint, later amended to show his or her true name. [Citations.] In short, a plaintiff has three years

7

from the date of filing the complaint to identify and serve a Doe defendant. [Citation.]" (*Inversiones Papaluchi S.A.S. v. Superior Court* (2018) 20 Cal.App.5th 1055, 1061 (*Inversiones Papaluchi*).) Section 583.250 both reiterates that the action "shall" be dismissed if service is not timely made, and adds that dismissal is both mandatory and "not subject to extension, excuse, or exception except as expressly provided by statute." (*Id.,* subds. (a)(2), (b); *Watts v. Crawford* (1995) 10 Cal.4th 743, 748.) However, "[t]he time within which service must be made . . . does not apply if the defendant . . . does [an] act that constitutes a general appearance in the action." (§ 583.220.)

We review an order dismissing the defendant for failure to serve the complaint within three years for abuse of discretion. (See *Busching v. Superior Court* (1974) 12 Cal.3d 44, 53 [predecessor to § 583.250]; *Republic Corp. v. Superior Court* (1984) 160 Cal.App.3d 1253, 1258 [same].) Under this test, we review the trial court's findings of fact for substantial evidence, and we apply a de novo standard of review to its conclusions of law. The trial court's application of the law to the facts is reversed only if it is arbitrary and capricious. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; *Samsky v. State Farm Mutual Automobile Ins. Co.* (2019) 37 Cal.App.5th 517, 521.) Thus, a discretionary order based on unsupported findings of fact, or on incorrect legal assumptions, is not an exercise of informed discretion and is subject to reversal.

### B. Watson's Attempted Substitute Service Was Untimely

The three-year period within which service must be completed begins when the complaint is filed. (§ 583.210, subd. (a); *Inversiones Papaluchi, supra,* 20 Cal.App.5th at p. 1061.)

This is true as to fictitiously-named defendants as well. (*Lesko v. Superior Court* (1982) 127 Cal.App.3d 476, 481-482.) Filing an amended complaint does not affect this calculation, except in cases where the amended complaint either adds a new defendant or is based on a different set of facts than the original pleading. (*Barrington v. A.H. Robins Co.* (1985) 39 Cal.3d 146, 154.) Neither of these exceptions applies: Both DMA and Doe 3 were named (albeit fictitiously) in Watson's original complaint, and his amended complaint neither adds new parties nor changes the factual basis of the claims alleged in the original complaint.

With these rules in mind, it is obvious that Watson's attempted service on defendants in June of 2022 was untimely by more than a year.[3] Watson filed this action on May 22, 2018, meaning service had to be completed no later than Monday, May 24, 2021.[4] Once the three-year deadline has passed, dismissal is mandatory regardless of whether the plaintiff later serves the defendant. (*Inversiones Papaluchi, supra*, 20 Cal.App.5th at pp. 1061-1062 [dismissal of cross-complaint was mandatory where service completed 21 days after the three-year deadline passed].) Even if substitute service on Dorny in June of 2022 was done in compliance with applicable statutes, it occurred too late to avoid mandatory dismissal under section 583.210. Thus, we need not address the parties' contentions as to whether such service on DMA and Doe 3 was statutorily correct.

---

[3] Watson's attempted substitute service would be untimely even if the three years were calculated from the date he filed his first amended complaint.

[4] Because May 22, 2021 was a Saturday, Watson's last day to serve was extended to the following Monday. (§ 12a, subd. (a); *Ystrom v. Handel* (1988) 205 Cal.App.3d 144, 148.)

### C. Defendants Did Not Make a General Appearance

#### 1. General or Special Appearance

In the alternative, Watson identifies a number of acts taken by DMA and Doe 3 which, he argues, amounted to a general appearance and excepted his complaint from being dismissed under section 583.210. (See § 410.50, subd. (a) ["A general appearance by a party is equivalent to personal service of summons on such party"].) However, only a general appearance within three years after filing the complaint will prevent a dismissal. (*Brookview Condominium Owners' Assn. v. Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 509 ["To prevent dismissal, any claimed general appearance must have occurred within the mandatory three-year period. An appearance made thereafter does not deprive a defendant of his right to dismissal"]; *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1844, fn. 10 [same].) Thus, in determining whether either defendant made a general appearance, we look only at actions attributed to either DMA or Doe 3 that occurred on or before May 24, 2021.

California law on special and general appearances has been aptly described as "a quagmire filled with traps for the unwary." (Sen. Com. On Judiciary, Analysis of Sen. Bill No. 1325 (2001-2002 Reg. Sess.) as introduced Jan. 29, 2002, p. 3.) Generally speaking, "a *special* appearance, . . . [is] an appearance for the *sole* purpose of objecting to the court's jurisdiction." (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8 (*Marriage of Obrecht*).) On the other hand, " '[a] general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the

10

court to proceed . . .' [Citations.] . . . Thus, if a defendant seeks any affirmative relief on the merits, the application may be deemed a general appearance. [Citations.]" (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52-53 (*Dial 800*).)

Although section 1014 purports to define what actions by a defendant constitute a general appearance,[5] that statutory list has long been held to be nonexclusive. (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147.) Instead, "the term [general appearance] may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. [Citation.]" (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397.) With only broad generalizations as a guide, then, it comes as little surprise that "every special appearance involves a risk that the defendant may overstep the boundaries of this limited jurisdiction and thus be held to have made a general appearance." (Note, *Special Appearance in California* (1958) 10 Stan. L.Rev. 711, 712.)

### 2. Defendants' Opposition to Watson's Motion for an Order That Defendants Made a General Appearance

Watson contends that DMA and Doe 3 made a general appearance by opposing his motion for an order deeming them to have generally appeared, and that the trial court erred by making its order dated February 1, 2019, denying his motion

---

[5]     Section 1014 states, in pertinent part, that "[a] defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant."

11

deeming this a general appearance. We find no error for two reasons. First, Watson has failed to meet his burden "of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) The trial court's docket shows that defendants filed a written memorandum of points and authorities in opposition to Watson's motion on January 22, 2019. That document is not included in the record.[6] The record on appeal is also missing evidentiary objections and declarations that the trial court referred to in its order denying Watson's motion, as well as a record of oral argument on February 1, 2019.

In essence, Watson is asking us to find that the trial court erred in not finding DMA and Doe 3 generally appeared, without showing us what defendants filed in opposition to his motion, what evidence was presented to the trial court, and what was said to the court during oral argument. This we cannot do. "In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. 'If any matters could have been presented to the court below which would have authorized the order

---

[6] This omission should come as no surprise to Watson. He designated defendants' opposition as a document to be included in the record. A Certificate re Missing Documents dated December 7, 2023, states that the clerk was unable to locate copies of six documents designated by Watson, including "Defs.' Opposition to Pl. Mot. Deem Gen. App. Made January 22, 2019." That notice further recites that "efforts to obtain copies of said document(s) from parties and/or counsel for the Appellant, who requested the documents, have been made" but that "copies thereof [have not been] supplied by parties and/or counsel as requested."

12

complained of, it will be presumed that such matters were presented.' " (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)

In the absence of a more complete record, Watson has forfeited any argument that the order denying his motion to deem defendants to have generally appeared is not supported by substantial evidence. (See *People ex rel. Harris v. Shine* (2017) 16 Cal.App.5th 524, 533 [absence of a reporter's transcript generally prevents review of a substantial evidence argument]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*"].)

Watson also contends DMA's and Doe 3's opposition to his motion is itself a general appearance, because it is not included among the acts identified in section 418.10, subdivision (a). Watson insists there is no safe harbor for defendants' opposition to his motion for an order that defendants generally appeared.[7]

As an initial matter, Watson did not raise this argument to the trial court, and thus is foreclosed from raising it for the first time on appeal. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) We have discretion to consider Watson's argument, however, particularly where (as here) it raises a pure question of law. (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 421, fn. 7.) Having considered Watson's argument, we find it without merit. Watson cites no authority, and we have found none, supporting the proposition

---

[7]     Watson characterizes defendants' opposition to his motion as "in no way related to a challenge of personal jurisdiction."

13

that Watson can pre-empt defendants' opportunity to challenge personal jurisdiction by filing his own motion. DMA's and Doe 3's constitutional rights are at stake: "[u]nder the Fourteenth Amendment due process clause, the defendant must be given adequate notice and be subject to the personal jurisdiction of the court."[8] (*Dial 800, supra,* 118 Cal.App.4th at p. 51.) "[T]he Legislature enacted section 418.10 'to permit a defendant specially to challenge the court's personal jurisdiction without waiving his right to defend on the merits. . . .' [Citations.]" (*Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 190.) Defendants have a right to challenge personal jurisdiction without making a general appearance. Watson cannot strip defendants of their right to challenge personal jurisdiction by raising the issue in his own motion, forcing defendants either to remain silent or risk a general appearance. Caselaw supports this analysis. (See *Berard Construction Co. v. Municipal Court* (1975) 49 Cal.App.3d 710, 717 (*Berard*) [citing cases that hold that filing a motion to dismiss under the five-year rule or a challenge under section 170.6 is not a general appearance].)

---

[8] Whether a California court can assert personal jurisdiction over DMA and Doe 3 is not a hypothetical question. There is nothing in the record to show that DMA or Doe 3 is subject to jurisdiction in California. Unlike the defendants identified as Jane Doe 1 and Jane Doe 2, both of whom were alleged to reside in Los Angeles County, Watson made no allegations about the residence of DMA or Doe 3. Nor is it clear that any defendant's activities were directed to California, because Watson alleges he was working in Colorado when the statements he complains of were made.

14

### 3. Motions Regarding Watson's Third-party Subpoenas

We next address Watson's argument that defendants' motion to quash his third-party subpoenas, and their later opposition to his motion to modify the February 1, 2019 protective order, were a general appearance. Citing *1880 Corporation v. Superior Court, supra,* 57 Cal.2d at page 843, where the Supreme Court held that objections to interrogatories were not a general appearance, the trial court concluded a motion to quash third-party subpoenas did not amount to a general appearance. The court declined to find DMA and Doe 3 made general appearances "simply by invoking the procedural protections enacted to give parties and non-parties an opportunity to object to unmasking subpoenas like those at issue here."

We agree with the trial court's analysis. To determine whether defendants made a general appearance, we "analyze the defendant's papers to determine if any affirmative relief could be granted on the merits." (*Dial 800, supra*, 118 Cal.App.4th at p. 54.) We have reviewed the motions and oppositions filed by DMA and Doe 3 and find no request for relief affecting the merits of Watson's case. To the contrary, California law specifically recognizes the rights of both parties and nonparties to seek the court's protection under the circumstances present here. Section 1987.1 provides that "[a] person whose personally identifying information, as defined in subdivision (b) of Section 1798.79.8 of the Civil Code,[9] is sought in connection with an

---

[9]    The definition of "personally identifying information" in Civil Code section 1798.79.8, subdivision (b) includes the information sought in Watson's third-party subpoenas, including

15

underlying action involving that person's exercise of free speech rights" (*id.* at subd. (b)(5)) may move for "an order quashing the subpoena entirely, modifying it, or directing compliance with it upon those terms or conditions as the court shall declare, including protective orders.  In addition, the court may make any other order as may be appropriate to protect the person from unreasonable or oppressive demands, including unreasonable violations of the right of privacy of the person."  (*Id.* at subd. (a).) Nothing in section 1987.1 limits its applicability to persons who first concede the jurisdiction of the court over them.  Instead, the trial court correctly noted that both parties and nonparties alike may "seek relief against unreasonable or oppressive subpoenas."

Watson's third-party subpoenas did not seek information going to the merits of the action:  in his own words, his "subpoenas seek only to identify the individuals responsible for posting the allegedly defamatory statements against him." This is distinct from the merits of the case, because defendants' identities are not an element of Watson's causes of action. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399.)

Although Watson's subpoenas did not seek discovery of facts going to the merits of the action, they did threaten DMA's and Doe 3's exercise of their First Amendment rights. "Anonymity is a shield from the tyranny of the majority. [Citation.]  It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular:  to protect

---

an "electronic mail address or other online contact information, such as an instant messaging user identifier or a screen name that reveals an individual's electronic mail address" or "[i]nternet protocol address or host name that identifies an individual."

16

unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." (*McIntyre v. Ohio Elections Commission* (1995) 514 U.S. 334, 357.)  California, too, recognizes the importance of the right to speak anonymously. "The use of a pseudonymous screen name offers a safe outlet for the user to experiment with novel ideas, express unorthodox political views, or criticize corporate or individual behavior without fear of intimidation or reprisal.  In addition, by concealing speakers' identities, the online forum allows individuals of any economic, political, or social status to be heard without suppression or other intervention by the media or more powerful figures in the field." (*Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1162.)  DMA's and Doe 3's expressed aim in their motion to quash was to protect their First Amendment rights to speak anonymously, and to protect their identities from disclosure.

California has long recognized that a party may invoke a statutory remedy, not affecting the merits of the action, without making a general appearance.  In *Salmonson v. Streiffer* (1910) 13 Cal.App. 395, an attorney representing an unserved defendant objected to the sufficiency of the sureties on an undertaking to secure an attachment.  Thereafter, the clerk entered the unserved defendant's default and a default judgment, treating the objection to sureties as a general appearance.  On appeal from an order vacating the default judgment, the Court of Appeal rejected plaintiff's argument that objecting to sureties was a general appearance:  "excepting to the sufficiency of sureties upon an undertaking is in no sense an appearance in the action wherein the attachment is issued.  To so hold would not only violate the express provisions of section 539, Code of Civil

17

Procedure, but impose a penalty upon the defendant, whether resident or nonresident, by requiring him to subject himself to the jurisdiction of the court as a condition of exercising the right conferred by statute." (*Id.* at p. 398.)

More recently, the Court of Appeal held in *Root v. Superior Court* (1962) 209 Cal.App.2d 242, that a foreign entity did not consent to personal jurisdiction by moving to dissolve a writ of attachment. "[A]n attack by defendant upon an attachment does not constitute a general appearance which would subject it personally to the jurisdiction of the court. . . . A dissolution of an attachment is not the type of relief that could only be granted on the hypothesis that respondent court has jurisdiction over its person; therefore, an appearance for that purpose only should not be considered a general appearance." (*Id.* at p. 246.)

In *Fount Wip, Inc. v. Golstein* (1973) 33 Cal.App.3d 184, the Court of Appeal rejected the argument that a defendant who specially appeared to set aside a default judgment unwittingly made a general appearance by also moving to quash a writ of execution and set aside a levy of execution. There, the court stated, "even if we assume arguendo that defendant did not confine himself to a special appearance on the issue of jurisdiction, we hold, nonetheless, that defendant did not enter a general appearance and did not expose himself to the personal jurisdiction of the court: 'If, in a proceeding begun by attachment . . . in a court which has no jurisdiction over the defendant, he enters an appearance for the purpose of contesting the validity of the plaintiff's claim, he does not thereby subject himself personally to the jurisdiction of the court. . . . .' [Citations.]." (*Id.* at p. 190, fn. omitted.)

18

Finally, in *Berard,* the Court of Appeal held that a party who sought an award of attorney fees in connection with a motion to dismiss did not concede jurisdiction by doing so. "An application for attorney's fees under section 1717, whether or not they are deemed costs, is thus an appropriate incident of a motion to dismiss on the ground of inconvenient forum. The application is no more inconsistent with the concept of special appearance than is the main motion, which is statutorily deemed not a general appearance. It would, moreover, defeat the purpose of that statutory exemption to hold that defendants may claim statutory rights appurtenant thereto only by surrendering their basic rights thereunder." (*Berard, supra*, 49 Cal.App.3d at p. 717.)

Notwithstanding the foregoing cases, each of which supports the trial court's order, Watson argues that section 418.10 is an exclusive list of acts a specially appearing party may do, and that "any other acts by a party or even nonparty, will be considered a general appearance." In support of this argument, he cites a number of cases for the general proposition that "if a party seeks relief on any basis other than lack of personal jurisdiction, it is a general appearance."

As the foregoing cases show, however, the reality is more nuanced than Watson admits. A more accurate formulation of the test for a general appearance is whether a party is asking the court for a ruling affecting the merits of the case. (*Dial 800, supra,* 118 Cal.App.4th at p. 53 ["if a defendant seeks any affirmative relief on the merits, the application may be deemed a general appearance"]; *California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [a general appearance is where defendant shows " 'a "purpose of

19

obtaining any ruling or order of the court going to the merits of the case" ' "]; *Chilcote v. Pacific Air Transport* (1937) 24 Cal.App.2d 32, 35.)

This principle distinguishes the cases Watson relies on from the acts taken by DMA and Doe 3, which Watson conceded below did not affect the merits. For example, the defendants in *Roy v. Superior Court* (2005) 127 Cal.App.4th 337, filed an answer and affirmative defenses, "propounded discovery and filed numerous motions to compel when satisfactory responses were not received," and moved for summary judgment. (*Id.* at p. 340.) In *Marriage of Obrecht, supra,* 245 Cal.App.4th at page 8, the defendant participated in a hearing to determine spousal support without taking any apparent steps to challenge personal jurisdiction until approximately three months later. And the defendant in *Chitwood v. County of Los Angeles* (1971) 14 Cal.App.3d 522, 526, responded to interrogatories going to the merits of the plaintiff's claims.[10]

---

[10] *Chitwood* illustrates the importance of looking at the facts of each case. There, the court stated that responding to interrogatories "is evidently predicated on the assumption that the court has jurisdiction over the answering party – otherwise, there would be no need for the answers." (*Chitwood, supra*, 14 Cal.App.3d at p. 528.) While this may have been true of the responses at issue in *Chitwood,* it is incorrect as a general statement of law. For example, a plaintiff may serve interrogatories in connection with a motion to quash. A specially appearing defendant responding to those interrogatories could not be presumed to be acting "on the assumption that the court has jurisdiction over the answering party." (See *Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246, 250 (*Factor*) ["conduct of discovery on the jurisdictional issue, rather

20

To the extent that defendants' motions to quash refer to the merits of the case, we find those references do not cross the line between a special and a general appearance. (*Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1153 [brief references to the merits in defendants' papers did not rise to the level of a general appearance where "[d]efendants expressly adhered to their position that the trial court had no personal jurisdiction over them"].) These arguments related to the balancing test that had to be addressed when considering defendants' objections to Watson's subpoenas seeking to discover their identities and did not otherwise address the merits.

As the foregoing cases show, generalizations of what is or is not allowed as a "special appearance" are less valuable than a case-by-case analysis of the purpose underlying a given statutory right, and the effect of burdening that right by treating its exercise as a general appearance. The Legislature amended sections 1987.1 (and 1987.2) to permit motions to quash so-called unmasking subpoenas "to clarify that anonymous speakers whose personally identifying information is sought in such cases may bring a motion to quash, and by amending the [Code of Civil Procedure] to provide that such moving parties who prevail on a motion to quash or modify a subpoena are entitled to receive their reasonable attorney fees." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2433 (2007-2008 Reg. Sess.) as amended June 26, 2008, p. 4.) The purpose of the amendment was to "allow those whose records or other information are being sought, and subpoenaed witnesses, including online service providers, to recover their costs and

_____

than the merits of the case, is not considered a general appearance in the action"].)

attorneys' fees in resisting abusive subpoenas, and [to] create a disincentive for seeking such subpoenas in California in the first place." (Assem. Com. On Judiciary, Rep. on Assem. Bill No. 2433 (2007-2008 Reg. Sess.) as amended April 2, 2008, p. 2.) In light of these purposes, and consistent with the line of cases discussed above, we conclude that the trial court correctly decided that DMA's and Doe 3's exercise of their statutory right to quash Watson's subpoenas should not be burdened by deeming it a general appearance.

### 4.     Availability of Sanctions and Attorneys Fees

We next address Watson's argument that defendants' motion for a protective order is a general appearance because "the court would have jurisdiction over the nonparty to order discovery and to impose sanctions if the order is disobeyed." This, too, is incorrect. Watson's subpoenas were directed to third parties, and the protective order bound Watson and the subpoenaed parties. Any violation of the protective order would be enforced against the third parties or against Watson, not against DMA or Doe 3.

Watson also contends the motion to quash was a general appearance because DMA and Doe 3 requested an award of attorney's fees and costs from the court. Defendants respond that a request for sanctions under section 1987.1 is not a general appearance because it is a remedy for parties and nonparties alike, citing *Berard, supra.* Assuming the language Watson points to can be deemed a request for sanctions,[11] we agree with

_____

[11]     Defendants' motion to quash has none of the hallmarks of a request for sanctions or fees. For example, the caption does not mention a request for sanctions, there is no declaration by

defendants that *Berard* states the correct rule. There, the court held that a request for attorney's fees was not a general appearance because it was part of a motion to dismiss for inconvenient forum, which, by statute, was not a general appearance. (*Berard, supra*, 49 Cal.App.3d at p. 717.) We have already held that defendants' motion to quash under section 1987.1 was not a general appearance because it involved subpoenas that did not address the merits of Watson's complaint. As was the case in *Berard*, defendants' request for sanctions "is no more inconsistent with the concept of special appearance than is the main motion." (*Ibid.*)

### 5. Defendants' Ex Parte Applications

Finally, we address Watson's argument that defendants made general appearances by filing ex parte applications requesting, for example, extensions of time to file noticed motions or responses.[12] Watson cites no authority that an ex parte application to extend time to make or oppose a noticed motion, where the noticed motion does not affect the merits of the action, is a general appearance. All of the cases cited by Watson pertain to requests for continuances that related to hearings on the merits or involve conduct far beyond that which occurred here.

---

defendants' counsel setting out the fees and expenses incurred in making the motion, there is no request for a specific sum to be awarded, and there is no indication of who is to pay or receive sanctions.

[12]     Although Watson contends that the ex parte application for an extension of time to move to quash his third-party subpoenas was a general appearance, the record shows that application was made by Doe 1. Watson does not explain why we should attribute that ex parte application to either DMA or Doe 3.

(*See Factor, supra,* 132 Cal.App.4th at p. 251 [defendant generally appeared when petitioners sought discovery to enable them to oppose preliminary injunction]; *Roy v. Superior Court, supra,* 127 Cal.App.4th at p. 340 [defendants generally appeared after filing case management statement, attending conferences, propounding discovery, filing numerous motions to compel and a motion for summary judgment in addition to requesting various continuances]; *Zobel v. Zobel* (1907) 151 Cal. 98, 99-100 [defendant appeared at a hearing  on plaintiff's motion to strike defendant's demurrer and answer and requested a continuance without raising any jurisdictional challenge until after default was entered].)

Moreover, section 418.11 provides that "[a]n appearance at a hearing at which ex parte relief is sought . . . is not a general appearance and does not constitute a waiver of the right to make a motion under Section 418.10."  Under that statute, an ex parte appearance at a hearing not affecting the merits is not a general appearance.  (*See Factor, supra,* 132 Cal.App.4th at pp. 250-251.)

## DISPOSITION

We affirm the order dismissing Watson's first amended complaint.  DMA and Doe 3 are awarded their costs on appeal.


RICHARDSON, J.

We concur:



LUI, P. J.                    ASHMANN-GERST, J.


24